# BERGQUIST ET AL. v WEST VIRGINIA-WYOMING COPPER COMPANY.

## (No. 596.)

MINES AND MINERALS—ADVERSE SUIT—PLEADING—CONSTRUCTION AND EFFECT OF AVERMENTS—DEED—CONSTRUCTION AND EFFECT— LOCATION OF MINING CLAIM—RELOCATION—ABANDONMENT—LOCA- TION CERTIFICATE—ADMISSIBILITY OF DEFECTIVE CERTIFICATE IN CONNECTION WITH AMENDED CERTIFICATE—CONFLICTING LOCATIONS —PRIVITY—LOCATION NOTICE—OBJECT—SUFFICIENCY—MARKING BOUNDARIES—RELOCATION BY ORIGINAL LOCATORS—RIGHT OF POS- SESSION TO COMPLETE LOCATION—TRESPASS—VALIDITY OF LOCATION BY TRESPASSER—EFFECT OF COMPLETED LOCATION—RIGHTS OF JUN- IOR LOCATOR—LOCATION CERTIFICATES SIGNED BY AGENT—RATIFICA- TION—SUFFICIENCY OF LOCATION CERTIFICATE.

1. The answer in an adverse mining suit alleged that the defendant and its grantors were and are the owners and in actual occupation of the claims in controversy since January 1, 1900. *Held,* that by said averment the defendant was not confined, in showing a right to one of the claims, to the original location thereof made prior to 1900, but might show a subsequent location of the same claim made to cure defects in the original location; the answer also denying the alleged rights of the plaintiffs, and alleging defendant to be entitled to the possession of the claim upon a full compliance with the mining laws.

2. Where there had been two locations of a mining claim under the same name and with the same boundaries, the second location having been made to cure defects in the first, a warranty deed of the claim, executed by all the locators under each location, *held,* to have passed the title of the locators under either location, although the claim was described in the deed by reference to the recorded certificate of the original location, it appearing that the grantee had been given possession of the claim, and that the description in the record referred to, as to situation and boundaries, would fit the claim under either location.

3. In an adverse mining suit, where it appeared that there had been two locations of defendant's claim under the same name and with the same boundaries, the second having been made to cure defects in the first, and that all the locators under each location had executed a warranty deed of the claim to defendant's grantor, which passed the title of the locators under either location; *Held,* that it was not material as against the plaintiffs whether the proper source of defendant's title was the original or subsequent location, if either was good and entitled defendant to possession.

4. If a second location of a mining claim, with the same name and boundaries, attempted by, or in the interest of, the original locators, should be found to be invalid, such attempt to relocate will not constitute an abandonment or forfeiture of the former location.

5. Although an original location certificate of a mining claim is void, for non-compliance in some particular with the statute, it is admissible in evidence in connection with an amended certificate, but a failure to offer it in evidence will not render the amended certificate inadmissible, where the only objection interposed is that an interven-

ing right had been acquired prior to the recording of the same, and the objecting party claims to have made an authorized relocation of the ground on the theory alone that it had become subject to relocation because of an adjudged defect in such original certificate of the prior claim, showing it to have been conceded on the trial that an original certificate had been recorded, and that it was defective.

6. Where discovery had been made on a mining claim, and all the necessary acts of location properly performed, except the recording of a valid location certificate, and within the time required for recording such certificate, one was recorded that was subsequently adjudged to be defective and void, but, thereafter, and before a junior conflicting locator recorded his certificate, an amended certificate of the senior claim was recorded to correct the errors in the original certificate and record, the opinion is expressed, but without deciding the case upon that point alone, that the senior claim, through the filing of the amended certificate under the circumstances stated, became the prior location.

7. After the location certificate of a mining claim otherwise properly located had been declared defective and void, one of the original locators and another interested party proceeded to relocate the claim under the same name and with the same boundaries, posting location notice in the shaft house of the former claim. *Held,* that the fact that one of the parties making the relocation had been an original discoverer and locator of the lode, and that both of them had sunk the shaft on the former claim, and each knew of the existence in such shaft, and at the point where the location notice was posted, of mineral-bearing rock in place, although at the time of posting the notice the ground was covered with snow, sufficiently shows a discovery to support the new location, if the ground was open to relocation.

8. The object of the notice required by the statute to be posted by the discoverer upon a lode mining claim at the point of discovery, as one of the acts designating the location of the claim, is to show the discoverer's intention to claim the vein to the extent described, and to warn others that it has been appropriated; and, since it is not required to be recorded, such a notice is to be liberally construed, and its sufficiency to accomplish the purpose intended is a question of fact.

9. The recorded location certificate of a lode mining claim having been declared defective and void, one of the locators and another proceeded to relocate the claim, placing a location notice written on paper in the ridge log of the shaft house to protect it from the wind, and another notice written on a slab on the top of the shaft. Later in the same day a conflicting notice was posted at the same shaft house by others, who saw and read the prior notice on the slab, and observed other indications that some person or persons had recently been there. There was a conflict in the evidence, in an adverse suit contesting the location under the earlier notices, whether the notice on the slab mentioned the year in stating the date. *Held*, without considering the evidence as to the absence of the year in the date named in the notice on the slab, that the two notices were to be considered together; that as the paper notice contained the complete date the notices were sufficient in that respect, especially as it appeared that the locators of the conflicting and adverse claim were not misled as to the date of the notice, or the time when it was posted; and that the paper notice was sufficiently posted, it appearing that it was not so concealed as to escape observation upon reasonable search.

10. The statute requires that the discoverer of any mineral lead, lode, or vein, before filing a location certificate, shall designate the location by posting at the point of discovery, on the surface, a plain sign or notice, containing the name of the lode or claim, the date of discovery, and "the name of the discoverer and locator." *Held*, that a location notice signed by a party as "locator" and stating that "the undersigned" has on a date named located and claimed 1,500 feet on "this lead, lode or mineral deposit," the number of feet in each direction from the location notice, or from discovery, being also specified, is not insufficient for failing to expressly state that the locator is the discoverer, for, since the statute permits a location to be made only by the discoverer, the person signing a location notice as locator is to be understood as claiming discovery, and to be both discoverer and locator; and the words "discoverer and locator," as used in the statute refer to the same person.

11. A location notice of a mining claim is not invalidated by the fact that it was posted after midnight of the date it bears, no fraud or fraudulent intent appearing, and the no-

tice having been posted before the initiation of an adverse or conflicting claim.

12. The date of discovery is sufficiently stated in a location notice of a lode mining claim, within the meaning of the statute requiring the notice to contain such date, which recites that on the date mentioned in the notice the person or persons signing it located and claimed the lode to the extent therein described, for the notice is to be liberally construed, and the date inserted is to be understood as the date of discovery, the statement of no other date being required.

13. Where, by reason of the fact that the recorded location certificate of a lode mining claim has been adjudged defective and void, the original locators, or others in their interest, proceed to make a relocation of the claim, intending to cover the exact ground embraced in the former location, they may adopt the old boundaries and boundary stakes or markings, said boundaries having been marked as required by law under the former location, and the posts or monuments remaining in place at the time of the relocation; and the adoption thereof is shown by the fact that the location certificate of the claim as relocated conforms in its description of the claim by metes and bounds to the description of the claim as originally located and marked, and thereby refers to the boundary stakes and monuments already in place, there having been no attempt to mark the boundaries anew.

14. Where the recorded location certificate of a lode mining claim has been adjudged defective and void, the claim having been otherwise properly located, and considerable development work, including all that the law required, had been done, the locators thereof, or another for their benefit, may, to protect their interest, make a new location of the same ground.

15. The location of a mining claim is void which is made upon ground covered at the time by a prior, valid, and subsisting location.

16. The posting of a location notice on a lode mining claim, based at the time upon a valid discovery, entitles the locator to such possession during the statutory period for completing the location as will enable him to perform the other necessary location acts, and, if excluded therefrom by the wrongful act of another, he may maintain a suit to recover possession.

17. A right to public lands cannot be acquired by trespass, and an entry upon the prior possession of another is a trespass tending to breaches of the peace, and should not be encouraged.

18. Two conflicting mining location notices posted at identically the same place, covering and claiming the same point of discovery, cannot both be valid during the same period of time. The prior notice, if sufficient in form and based on a valid discovery, necessarily has precedence, and entitles the discoverer and locator to the sole benefit. of the discovery at that point during the period allowed for completing his location, unless 'he abandons it in the meantime. During such period the same discovery is not subject to appropriation by another for the purpose of initiating a right by location.

19. When a mining location is perfected it has the effect of a grant by the United States of the right of present and exclusive possession.

20. Whatever rights are acquired by the junior locator of a mining claim through the posting of location notice and the sinking of discovery shaft during the period allowed for completing the senior location are subject to the right to complete the prior location, will be divested upon the completion thereof, and will not be revived by a subsequent forfeiture or abandonment of the senior location.

21. A lode mining claim, which had been in the possession of the original discoverers and locators for several years, and upon which considerable development work had been done, including all that the law required, was relocated with the same name and boundaries in the interest and for the benefit of the original locators, on account of an adjudged defect in the original location certificate. *Held*, that one having acquired all the title of the locators under either location might record an additional or amended location certificate claiming thereby an original discovery as of the date of the discovery upon which the original location was based.

22. A defendant in an adverse mining suit offered in evidence and relied upon amended certificates of location of the claims in controversy, which had been signed in the name of the defendant by its attorney, the latter testifying that he signed the same by virtue of a power of attorney that had been filed in the land office. Such amended certificates had been recorded, and they were admitted in evidence over the objection of the plaintiffs. *Held*, (1)

That, the plaintiffs failing to show a right to the property, it was immaterial, as against them, whether the certificates had been signed with authority or not. (2) That by offering the certificates in evidence and relying upon them, the defendant had shown a ratification of the act of its agent, even in the absence of original authority.

23. Where the location certificate of a mining claim has been on record several years prior to the attempted' location of an adverse claim, the locators having continued in possession and done the required development work, it is unnecessary, as against an adverse claimant, to prove the posting of location notice upon the surface of the claim.

24. In the absence of affirmative evidence on the part of plaintiffs in an adverse mining suit that the necessary act for the location of the claims of defendant had not been ' properly and timely performed, the evidence on behalf of defendant in that respect stated and held sufficient *prima facie* to show the proper location of such claims, and to sustain the judgment awarding possession to defendant.

25. In the location certificate of a lode mining claim, the length of the claim was stated in each direction from the "location shaft," and in that of another claim, from the "location." *Held,* that it was the evident intention to give the length each way from the center of the discovery shaft, as required by statute, and that "location shaft" in the one certificate, and "location" in the other, were to be understood as referring to and meaning the discovery shaft.

[Decided February 7, 1910.]                    (106 Pac. 673.)

Error to the District Court, Carbon County; Hon. David H. Craig, Judge.

The facts are stated in the opinion.

*Charles E. Winter,* for plaintiffs in error.

The issue in an adverse suit is not which party can show the better title, but which, if either, can show right of possession, and to patent, as against the title of the government. (Iba v. Central Assn., 5 Wyo. 355; Slothower v. Hunter, 15 Wyo. 189; Providence &c. Co. v. Burke,

57 Pac. 643; Becker v. Pugh, 17 Colo. 243.)   All the steps necessary to the valid location of a mining claim must, when the locator's right is challenged, be established by proof outside of the location certificate.   The certificate may then be considered as *prima facic* evidence of such other facts as are required to be therein stated.   (1 Lindley on Mines, 711-713; Strepy v. Stark, 5 Pac. 111; Smith v. Newell, 86 Fed. 56.)   Each party must establish his right by evidence.   (1 Lindley, 392; Becker v. Pugh, 17 Colo. 243; Iba v. Assn., 5 Wyo. 355; Rosenthal v. Ives, 12 Pac. 904; Bay State &c. Co. v. Brown, 21 Fed. 167; Jackson v. Roby, 109 U. S. 440; Schultz v. Allyn, 48 Pac. 960; M. Co. v. Havnor, 66 Pac. 762; 59 Cal. 613; 201 U. S. 184; 163 U. S. 160; 68 L. R. A. 833; 18 Pac. 625; 5 Pac. 652; 12 Pac. 198; 115 U. S. 45; 12 Nev. 312; 33 Pac. 49; 44 Pac. 508.)

The evidence conclusively shows that the law was fully complied with in the location of the Merry Christmas lode.   The locators had 60 days to sink discovery shaft. (Rev. Stat. 1899, Secs. 2546, 2548; Marshall v. Harney &c. Co., 47 N. W. 290.)   It was not necessary that the discovery shaft be sunk at the point of discovery.   (Harrington v. Chambers, 1 Pac. 375.)   It was sufficient to place a location notice on the lode, or in such reasonable proximity as to identify it.   (1 Lindley, 641; Donahue v. Meister, 25 Pac. 1096; Gird v. Oil Co., 60 Fed. 531.)   The stakes marking the boundaries, as required by statute, were sunk, and although some of them may have failed to penetrate the ground because of the snow, there was still a substantial compliance with the statute.   (Morrison, 411; Hoffman v. Beecher, 31 Pac. 92; 1 Lindley, 682, 684, 681, 690; Mining Co. v. Mining Co., 6 Sawy. 299; Gleason v. Mining Co., 13 Nev. 442; Mining Co. v. Collison, 5 Sawy. 439; Eilers v. Boatman, 2 Pac. 66; 111 U. S. 356.)   Where a mining location has once been sufficiently marked the right of the locator will not be divested by the subsequent obliteration or removal of the stakes without the locator's fault.   (Book v. Mining Co., 58 Fed. 692; Mc-

Evoy v. Hymen, 25 Fed. 596; Smith v. Newell, 86 Fed. 56; Mining Co. v. Knight, 56 Pac. 1091; Walsh v. Erwin, 115 Fed. 531; 1 Lindley, 692.) There was sufficient discovery. (Hays v. Lavagnino, 53 Pac. 1029.)

Under the answer the defendant is confined, so far as the Little Joe claim is concerned, to a location and a discovery prior to January 1, 1900, for no right of possession is alleged under the location of December 24, 1906. In adverse suits the rules of pleading in the courts of the State must be followed. (Iba v. Assn., 5 Wyo. 355.) There was no evidence that the boundaries of the new location of the Little Joe were marked. It was necessary for defendant to prove a marking of the boundaries. (27 Cyc. 566; Ledoux v. Forrester, 94 Fed. 600; Willeford v. Bell, 49 Pac. 6; Anthony v. Jillson, 23 Pac. 419; Becker v. Pugh, 13 Pac. 906; Belk v. Meagher, 104 U. S. 279; Brockbank v. Mining Co., 81 Pac. 863.) Under the new location it was not permissible to adopt the old stakes, nor were they adopted. It was not a relocation of an abandoned claim. The notices of discovery were fatally defective. The notice on the slab did not contain a complete date. Neither notice stated the date of discovery, nor the name of the discoverer and locator as required by law. Such as the notices were, they were not posted on the date they bore.

All right of the locators of the original Little Joe was forfeited by the decision that the location certificate was void. (Sisson v. Sommers, 55 Pac. 829; Mallet v. Mining Co., 1 Nev. 188; Barringger & Adams on Mines, 300; Morrison (10th Ed.) 110-112; Purdum v. Laddin, 59 Pac. 153.) The State has power to require other and additional rules than those required by the federal laws. (1 Lindley, 594; Purdum v. Laddin, *supra;* Belk v. Meagher, *supra;* Min. Co. v. Hammer, 8 Pac. 153; Sisson v. Sommers, *supra;* Erhardt v. Boaro, 113 U. S. 527.) The amended certificate should not have been received in evidence, without proof of an original location certificate. Had there been no forfeiture of the original location, and had the claim

been perfected by filing a valid location certificate at the time the first or second amended certificates were respectively filed, the defendant would still be without title or right of possession, for the reason that, after the expiration of the period allowed by law to perfect the location, and before the first amended certificate was filed, an intervening right was initiated by the location of the Merry Christmas lode, which location was duly perfected within the statutory period. (Mining Co. v. Allman, 64 Pac. 1019.) When an original location certificate may be deemed void, an additional one may be filed to correct the defects and both admitted in evidence. (1 Lindley, 719; Duncan v. Fulton, 61 Pac. 244; Morrison v. Reagan, 67 Pac. 955.) A subsequent certificate cannot, however, relate back to the original discovery where the original certificate is void. (Moyle v. Bullene, 44 Pac. 69; Morrison v. Reagan, *supra*.) The defendant failed to show that the necessary acts had been performed in the location of their several claims.

*McMicken & Blydenburgh,* for defendant in error.

It is true that when the right of possession of a mining claim is challenged by evidence it becomes necessary for the party claiming the right to prove by the evidence all necessary steps that have been denied, but when there is no evidence, as in this case, against the original location the proof may be sufficient, though extremely meagre, and the location certificate itself is *prima facie* evidence of the validity of the location. The answer of the defendant did not confine it in its proof to the original location of the Little Joe. The location of a mining claim dates from the posting of the notice, if all other acts are performed. The plaintiffs cannot claim anything under their location prior to Feb. 14, 1907, for the reason that that is the date of the location stated in their location certificate. Long before that date the defendant's grantor had fully perfected the location of the Little Joe claim. The plaintiffs' location certificate recites that their claim is situated south

of the "Little Wonder" and "Modoc" lodes, by which statement the lodes referred to are recognized as valid and subsisting claims at the date of said location certificate, and plaintiffs are therefore estopped from now claiming any of the ground within those lodes. The plaintiffs also claim that the discovery was made at the discovery shaft. That shaft was located some distance from the place where the discovery notice was posted, and there is no evidence that any mineral was discovered in the discovery shaft of the Merry Christmas claim until at least after the time had expired for sinking said shaft. We concede that it is not always necessary to sink a discovery at the exact point of first discovery, but there must be shown a well defined crevice or lead in the discovery shaft. (27 Cyc. 558 and cases cited; Rev. Stat. 1899, Sec. 2548; Cheeseman v. Shreeve, 40 Fed. 787.)

The evidence on the part of the plaintiffs failed to show that their stakes marking the boundaries of their claim were prepared or sunk as required by the statute, and if, as counsel contends, all the preliminaries must be strictly complied with, and proof thereof must be absolute irrespective of location certificate, then plaintiffs failed to prove any marking of the boundaries whatever, as required by the statute. The argument of counsel for plaintiffs with reference to necessity merely of substantially complying with the statutory requirements will, when applied to the Little Joe new location, render that location good in all respects on the morning that the Merry Christmas notice was posted. Neither of the locators of the claim of plaintiffs made any discovery of mineral on the claim. Cothern knew of the ledge, but he knew of it only from the discovery and work done by others. That was not sufficient, in view of the fact that the only actual discovery shown for that claim was disclosed, if at all, at the time of the completion of the discovery shaft. (McMuller v. Mining Co., 105 Am. St. 64.) The new location of the Little Joe was not a relocation of an abandoned claim, but it was in fact the relocation of the claim, and the acts

with reference to the Merry Christmas claim were performed in an attempt to locate a claim which had not been abandoned, but which it is claimed by the counsel for plaintiffs had been forfeited.

The location notices of the Little Joe location were properly posted and were sufficient in form.   By the decision holding the original certificate of the Little Joe to be void the claim itself was not forfeited.   Under the statute the location certificate only was void, and the locators might proceed to perfect a location by recording another certificate.   The certificate is made solely for the purpose of record.   (Ford v. Campbell, 92 Pac. 206.)   Had there been no original certificate, the amended location certificate dated in 1900 and filed in 1907 at a time when there were no intervening rights would have been a full compliance with the law.   It was not necessary to offer the original certificate in evidence.   Where the first step in locating a mining claim has been taken, viz: the posting of notice on the claim, no other rights can be initiated until the expiration of the statutory period for perfecting the location, and any attempt to do so will be void.   (Bramlett v. Flick, 57 Pac. 689; Book v. Mining Co., 58 Fed. 106; Gurney v. Brown, (Colo.) 77 Pac. 357; Erhardt v. Boaro, 8 Fed. 692; Omar v. Soper, 11 Colo. 380; Min. Co. v. Winchell, 83 Pac. 628; Lockhart v. Farrell, (Utah) 86 Pac. 1077.)

A location based upon a discovery within the limits of an existing and valid location is void.   (Belk v. Meagher, 104 U. S. 279; Gwillim v. Donnellan, 115 U. S. 45; Zerres v. Vanina, 134 Fed. 610; Book v. Justice M. Co., 58 Fed. 106; Perigo v. Erwin, 85 Fed. 904; Sullivan v. Sharp, 80 Pac. 1054; Kirk v. Meldrum, 28 Colo. 453; M. Co. v. Maier, 134 Cal. 583; Quigley v. Gillet, 101 Cal. 402; Wilson v. Freman, 75 Pac. 84; Upton v. Larkin, 17 Pac. 728; Shattuck v. Costello, 68 Pac. 529; Watson v. Mayberry, 49 Pac. 479; Reynolds v. Pascoe, 66 Pac. 1064; 1 Snyder on Mines, Secs. 572, 573; 1 Lindley, (2nd Ed) 337, 363.)   From these authorities and others the proposi-

tion is clear that where a notice is posted it withdraws
from location by others the land covered by the notice
until the period has expired within which the locator is
required to perform the other acts of location, and that
any attempt to locate the ground during such period will
be void and will have no effect in perfecting a valid loca-
tion.  As the Merry Christmas notice was posted after the
notice of the new location of the Little Joe it did not
give the plaintiffs any right whatever.  They, therefore,
have no concern with the amended location certificate of
the original Little Joe, because they had initiated no valid
intervening right.  The statute permitting amended cer--
tificates to be recorded, by. its reference to interference
with intervening rights, covers only the cases where by
an amended certificate it is attempted to take in ground
not included in the original location.  (Frisholm v. Fitz-
gerald, 53 Pac. 1109.)

A location notice is to be liberally construed.  (1 Lindley,
Sec. 355; Woolsey v. M. & M. Co., 60 Pac. 896;  M. Co.
v. Gold Co., 95 Pac. 14;  Zerres v. Vanina, 134 Fed. 616;
Copp's Min. Law, 68.)    Location certificates are them-
selves *prima facie* proof.  (Faction v. Bernard, 4 Fed. 702;
Jantzen v. Copper Co., 20 Pac. 93;  Cheeseman v. Shreeve,
40 Fed. 790;  Cheeseman v. Hart, 42 Fed. 98.)  The bur-
den of showing a forfeiture was on the plaintiffs.  (134
Fed. 614, 130 U. S. 291;  Johnson v. Young, (Colo.) 34
Pac. 173.)  The owner of a mining claim may relocate it.
(Cheeseman v. Shreeve, *supra;*  Pelican v. Snodgrass, 9
Colo. 339;  Johnson v. Young, 18 Colo. 625;  Warnock v.
DeWitt, 11 Utah, 324.)

We submit that under none of the contentions have the
plaintiffs made out any right to the ground in controversy.
If the ground was open to relocation on the morning of
December 25, 1906, then the defendant's grantor preceded
them in locating the ground, and the plaintiffs acquired
no right whatever by posting their notice.  If the original
location certificate was void, it did not affect the location
itself, but merely the record, and the amended certificate

perfected in all respects the original location. In either case the original location of the Little Joe claim stands unimpeachable. If the view be taken that the claim was open to relocation December 25, 1906, the notices of the new location were sufficiently posted and sufficient in form, and by the posting of such notices it became impossible for the plaintiffs to initiate any right for sixty days thereafter.

Potter, Chief Justice.

This is an action for the possession of certain mining ground situated in the Upper Platte and Battle Lake Mining District, in Carbon County in this State, and is brought in support of an adverse claim filed by the plaintiffs upon the application of the defendant for a patent to certain claims embracing the ground in controversy. Upon a trial in the District Court, without a jury, there was a general finding in favor of the defendant and against the plaintiffs, and a judgment to the effect that the defendant is entitled to the possession of the premises by virtue of a full compliance with the statutes relating to the discovery and location of mining claims. The plaintiffs bring the case here on error.

The plaintiffs claim under a location of the ground by them and one M. F. Cannon as the "Merry Christmas" lode mining claim on December 25, 1906, and a deed by Cannon subsequently conveying his interest to the plaintiff, Bergquist. The defendant's claim to possession is based upon locations by its grantors of three lode mining claims named respectively the "Modoc," "Little Wonder" and "Little Joe." The location of the Modoc and Little Wonder and the original location of the Little Joe occurred prior to 1900,—the Modoc, July 21, 1899, the Little Wonder August 17, 1898, and the Little Joe (as originally located) September 16, 1897. The record does not disclose any adverse or conflicting claims prior to December 25, 1906, on which date it is alleged that the Merry Christmas was located, though it is claimed on the part of the defendant

that a second location of the Little Joe was made on
December 24, 1906, to protect the rights of the owners
of that claim against any attempt by others with adverse
interests to relocate the ground.   On January 9, 1907,
amended location certificates of the Modoc, Little Wonder,
and original Little Joe were recorded, that of the Modoc
and Little Joe being dated June 14, 1900, and of the Little
Wonder June 13, 1900, they having been prepared in June,
1900, to agree with a survey of the claims made at that
time.   On April 12, 1907, the defendant, to whom the
three claims, among others, had in the meantime been
conveyed, filed another amended location certificate for
each claim.   The amended certificates appear to have been
filed to more definitely or correctly define the claim as
originally located, and not to change the surface boundaries.

The conflict relates principally to the Merry Christmas
and Little Joe, it appearing that in locating the former
claim it was intended to cover substantially the ground
included within the latter, upon the supposition that the
same had been forfeited and was open to relocation.   The
side lines of the Merry Christmas run parallel to and
within a few feet of the corresponding lines of the Little
Joe, and the claim extends a short distance northeasterly
beyond the northeast end line of the Little Joe into the
territory of the Little Wonder, leaving a small strip across
the southwest end of the Little Joe, and a narrow strip
along and, as we understand, within each of its side lines
untouched by the boundaries of the Merry Christmas lo-
cation.   With this explanation it will be sufficient, as show-
ing the relative positions of the several claims mentioned,
to refer to the map published with the opinion of this
court in the case of Slothower v. Hunter et al., 15 Wyo.
189, 195.

From the evidence it appears that the original discovery
upon the Little Joe was made at the time of its location
in 1897.   That claim, with the Little Wonder and others,
was involved in the case of Slothower v. Hunter et al.,
*supra,* wherein this court held that the original recorded

certificate of location of the Little Joe was void in that it failed to give the length of the claim along the vein each way, measured from the center of the discovery shaft, as required by the statute of this State. Thereupon the attorney representing the opposing interests advised or suggested the location of the ground by the plaintiffs, upon the theory that the decision in the case aforesaid in effect annulled all rights under the Little Joe location, leaving the ground unappropriated. A. M. Woodruff and F. E. Hunter, the latter being an original locator of the Little Joe, having learned of the decision in the Slothower case, and that others were proposing to locate the ground, at once took steps to protect the Little Joe location, and to that end on December 24, 1906, Woodruff prepared as of that date a notice of location of the Little Joe claim, to be posted in his name and gave it to Hunter for that purpose. Hunter also signed the notice and immediately went to the claim, reaching the same during the night, and thereupon, early in the morning of December 25, placed the notice in the ridge log of the Little Joe shaft house, and wrote another similar notice on a slab, signing his own name and Woodruff's as locators, and placed it on top of the shaft. Woodruff was one of the locators of the Modoc and the Little Wonder Claims adjacent to the Little Joe, and Hunter was also one of the locators of those claims.

About 11 o'clock in the forenoon, after Hunter had posted his notices as aforesaid, the plaintiff, Cothern, and M. F. Cannon arrived upon the ground and posted inside the shaft house of the original Little Joe claim a notice of the location of the Merry Christmas lode, the names of the plaintiffs, Bergquist and Cothern, and M. F. Cannon being signed as locators, the said notice being posted on a slab tacked upon one of the logs of the shaft house above the ground. Cothern and Cannon testified that when they arrived at the claim they noticed tracks in the snow, and thereby understood that some one had recently been there, and that they then saw and read the notice

of Woodruff and Hunter upon the slab. .

Considerable work had been done upon the original Little Joe, the shaft having been sunk to a depth of 50 to 60 feet, and the evidence shows that the claim had never been voluntarily abandoned. Hunter was one of the original discoverers and locators, and he and Woodruff did the work of sinking the shaft, and each knew at the time of posting their notice of the existence on the claim and at the point where the notice was posted of mineral bearing rock in place. Woodruff was on the claim on December 26 or 27, 1906, and early in January, 1907, he caused a shaft to be sunk for the new Little Joe location at a point about 60 feet easterly from the old shaft, and it was completed to the requisite depth of ten feet on January 6, 1907, disclosing mineral bearing rock in place. On January 29, 1907, a location certificate of the new Little Joe location, signed by Woodruff, was recorded.

After the completion of the new Little Joe shaft, and probably on the following day, Cothern commenced the digging of a shaft for the Merry Christmas, about 50 feet easterly from the old Little Joe shaft, and completed the same to the requisite depth, disclosing mineral bearing rock in place, about February 1, 1907. Thereafter, and before the expiration of 60 days from the date of posting the Merry Christmas notice, the locators thereof caused the boundaries to be surveyed and an attempt was made to mark the boundaries by stakes, but the stakes were all driven in snow, and it seems that some of them were not driven through the snow into the ground. On February 21, 1907, the locators of the Merry Christmas lode recorded a location certificate, dated February 18, 1907, giving the date of location as February 14, 1907. .

On January 29, 1907, all the locators of the Modoc, Little Wonder and Little Joe, including A. M. Woodruff, joined in a deed conveying said claims, with others, to the Witz Investment Company, a corporation; and on February 2, 1907, the Witz Investment Company conveyed the same mining claims to the defendant herein.

The Deputy Mineral Surveyor, who made the survey of said three claims in June, 1900, and prepared the amended certificates of that year, and who also surveyed for the plaintiffs the Merry Christmas lode as located, and made the map introduced in evidence by the plaintiffs to show the situation of the respective claims, testified that when he made the survey in 1900 the boundary stakes and monuments of the three claims of the defendant aforesaid were all in place, and there is nothing in the record to show or indicate that any of them were afterwards removed or displaced.

1. It is maintained on behalf of the defendant that proof of the validity of either location of the Little Joe is sufficient to sustain its right to that claim, since all the locators under the respective locations joined in the deed to defendant's grantor. That proposition is assailed upon two grounds: (1) That the answer confines the defendant to the original location of the claim, and (2) that the deed of the locators conveys only the claim as first located. The answer alleges in a second defense that the defendant and its grantors were and are the owners and in actual occupation of its three claims since January 1, 1900, and this is the averment conceived by the plaintiffs to bar any showing of right under the location of the Little Joe made in December, 1906. But we perceive no reason for holding that by such averment the defendant has presented an issue merely as to its right under the earlier location. It may be true that the defendant and its grantors had been the owners and in possession of the claim since the date stated, and yet could establish their right as against the plaintiffs only under the location of 1906; and, indeed, it appears to be a fact that the original locators of the Little Joe were in continuous possession thereof from a time prior to 1900 until at least December 25, 1906, and were holding such possession under a supposed valid location. But the answer denies the alleged rights of the plaintiffs and alleges generally that the de-

fendant is entitled to the possession of the three claims upon a full compliance with the mining laws.

The contention that the deed from Hunter, Woodruff and others to the Witz Investment Company conveys only the right of the grantors under the original location of the Little Joe is not sustained by a proper construction of that instrument or the facts of the transfer. It is a warranty deed, containing covenants of seizen and right to convey, against incumbrances, of quiet enjoyment and of warranty, "excepting the provisions, reservations and limitations contained in the patent of the United States to be issued for, said survey lots," referring, no doubt, by the use of the words "survey lots," to the ground embraced in the claims as finally surveyed. The premises conveyed are described as certain adjacent lode mining claims, the same being named, and including the "Little Joe," as the same are recorded in the records of Carbon County in certain books and at certain pages specified in the deed. And it seems to be supposed that because the records referred to, so far as the Little Joe is concerned, cover only the certificate or certificates of the original location of the claim, no right was acquired through the deed under the second location. But it is clear that the refeence to the recorded certificates was for the purpose of identifying the boundaries and situation of the respective claims, and not the designation of a particular location under which the mineral land had been appropriated. As the boundaries of the Little Joe under each location are exactly the same, as shown by the location certificates, the description fits the claim under either location. The grantee was given possession of the claim and the territory covered by it, and it was clearly intended to convey all the interest of the grantors in the claim, however and whenever located.

The Modoc, Little Wonder, Little Joe, and other adjoining claims are mentioned in the evidence as constituting a group of claims benefited by development work done in common, and inferentially, at least, it appears that the

respective locators, if not jointly interested in each claim, had a common interest of some character in maintaining and preserving the several claims. If the new location of the Little Joe should be found invalid for any reason, the attempt thereby to relocate would not constitute an abandonment or forfeiture of the former location, even though attempted in the interest of the original locators. (Weill v. Lucerne Min. Co., 11 Nev. 200; Temescal &c. Co. v. Salcido, (Cal.) 69 Pac. 1010.) The title of the locators under either location passed by conveyance to the defendant, and it is therefore not material as against the plaintiffs whether the proper source of the defendant's title is to be found in the original or new location, provided either is good, entitling the defendant to possession.

2. The original location certificate of the Little Joe lode does not appear to have been offered in evidence, and it is contended by the plaintiffs that without proof of the recording of an original certificate, the amended certificate was inadmissible. The objection is not well taken upon the facts shown by the record in this case, whatever the general rule on the subject. When the amended certificate was offered in evidence it was objected to on the sole ground that an intervening right had been acquired prior to the recording of such certificate. The reason for thus limiting the objection is rendered sufficiently clear by the fact that the acts of location in connection with the Merry Christmas claim were performed upon the theory alone that the ground had become subject to relocation because of the adjudged defect in the original certificate. That an original certificate had been recorded and that it was defective, for the reason above stated, are to be regarded as conceded facts upon the trial. The recorded proceedings of the trial cannot be otherwise reasonably interpreted. No reason except the defect in such certificate was suggested by any witness as a ground for believing that another location might properly be made, and in the brief of counsel for plaintiffs in error it is stated that this case is an outgrowth of Slothower v. Hunter, *supra,* where-

in the location certificate of the Little Joe was held to be insufficient and void. The original certificate, although defective, would have been admissible if offered in evidence in connection with the amended certificate. (Strepey v. Stark, 7 Colo. 614, 5 Pac. 111; Frisholm v. Fitzgerald, 25 Colo. 290, 53 Pac. 1109; Duncan v. Fulton, (Colo.) 61 Pac. 244.) But the failure to offer it did not render the amended certificate inadmissible, at least under the circumstances of this case.

3. Without reciting in detail the evidence relating to the original location of the Little Joe, we deem it sufficient to say that it shows a valid discovery upon the claim in 1897, the sinking of discovery shaft immediately thereafter, the staking of the boundaries, and the performance each year of the annual labor and development work required by law. That an original location certificate was recorded and within the period required by law, or at least, long prior to any attempt by others to relocate the ground, is to be regarded as conceded for the reasons previously stated. The amended certificate—so called—was dated, as aforesaid, June 14, 1900, recorded January 9, 1907, and signed by F. E. Hunter, R. F. Jones and H. L. Kuykendall, presumably the original locators, or at any rate, the then owners. It states that the claim described is the same that was originally located September 16, 1897, and that the amendment is made "without waiver of any previously acquired rights, but for the purpose of correcting any errors in the original location, description or record." At the time it was recorded, all that had been done toward the location of the Merry Christmas was the posting of notice, and the commencement of work upon a discovery shaft. The shaft, however, was not completed until about February 1, 1907. The statute provides that "Whenever it shall be apprehended by the locator, or his assigns, * * * that his or their original location certificate was defective, erroneous, or that the requirements of the law had not been complied with before the filing thereof, or shall be desirous of changing the surface boundaries of

his or their original claim or location, or of taking in any part of an overlapping claim or location which has been abandoned, * * * such locator or locators, or his or their assigns, may file an additional location certificate in compliance with and subject to the provisions of this chapter; Provided, however, That such relocation shall not infringe upon the rights of others existing at the time of such re-location, and that no such re-location, or other record thereof, shall preclude the claimant from proving any such title or titles as he or they may have held under any previous location." (Rev. Stat. 1899, Sec. 2538.)

The same statute exists in Colorado, and it has been held in that state that the section corresponding with our Section 2547, to the effect that a certificate is void, which does not fully contain all the requirements of Section 2546, together with such other description as shall identify the lode or claim with reasonable certainty, is to be construed with the section providing for the recording of additional certificates, whereby the imperfect certificate is not to be held absolutely void, since it is made capable of amendment, whereas "a void thing is null, and not subject to amendment;" and that when amended the amendment takes effect with the original as of the date of the latter. (McEvoy v. Hyman, 25 Fed. 596; Frisholm v. Fitzgerald, 53 Pac. 1109.)

In the case last cited Mr. Justice Goddard took the view that the proviso in relation to existing rights at the time of the recording of the additional certificate had reference only to a change of boundaries and a relocation that should take in territory not before included in the claim, and not to amendments made for other purposes, such as to cure defects in description. The other justices expressed no opinion upon the construction of the statute, but concurred in the decision on other grounds deemed sufficient to dispose of the case. There is much reason, we think, for the construction given the statute by Judge Goddard. In Idaho, where there is a similar statute, the court agrees with Judge Goddard's construction. (Morrison v. Regan,

67 Pac. 955.) And Lindley seems to accept that as the rule. He says: "A reasonable latitude of amendment is allowed, of which the locator cannot be deprived because some one has attempted to relocate the ground. There is a distinction between amending an original location by re-forming lines and rectifying errors based upon a prior discovery and location, and the relocation of abandoned ground." (Sec. 398.)

In a recent Colorado case it was held that where the location certificate of a senior location had not been filed within the statutory period, but its filing preceded the filing of the certificate of a junior conflicting location, though after the performance of some of the statutory acts of locating the junior claim, the senior claim became the prior location. The court say that the court should have told the jury, as a matter of law, "that the filing of the location certificate of the Evening Star, though not within the statutory time, yet in advance of the filing of that of the Little Jonnie, so far as that particular step in locating a mining claim is concerned, constitutes the Evening Star a prior location." (Washington Gold Min. & Mill. Co. v. O'Laughlin, 105 Pac. 1092.) That rule can, we believe, be correctly applied here, thereby confirming the priority of the original location of the Little Joe, through the filing of the amended certificate, five weeks or more before the filing of the certificate of the Merry Christmas, with title thereunder vested in defendant, its immediate grantor having acquired and conveyed to it all the right to the ground under either location of the Little Joe. But we are not disposed to rest our determination of the case altogether upon this proposition, for if we are wrong concerning it, then without reference to it a consideration of the other facts in the case must clearly demonstrate, we think, either that no rights were at any time acquired by the location under which plaintiffs claim, or that whatever inchoate rights were acquired were completely lost through the second location of the Little Joe claim. We therefore proceed to consider the other ques-

tions in the case, which were chiefly discussed by counsel, assuming, in doing so, that the ground of the Little Joe was open to relocation by reason of the stated defect in the original location certificate.

4. By reason of the prior posting of its location notice, the second location of the Little Joe constituted a prior appropriation of the ground embraced within its boundaries as against the plaintiffs, if the notice was sufficient, and the location was perfected, or sufficient location acts were performed to cut off any rights under the junior location. The fact that Hunter was one of the original discoverers and locators of the lode, and that he and Woodruff had done the work of sinking the shaft on the former claim, and each knew of the existence of mineral-bearing rock in place in that shaft and at the point where the notice was posted, sufficiently shows a discovery to support the new location at the time of posting the notice, if the ground was open to relocation. It is, however, contended in the first place that the location notice was insufficient.

The only notice required by our statute to be posted on the claim, or by any district rule, so far as this record discloses, is that provided for in Section 2548, Revised Statutes, 1899, which prescribes that before the filing of the location certificate the discoverer shall designate the location by, among other things, "posting at the point 'of discovery, on the surface, a plain sign or notice, containing the name of the lode or claim, the name of the discoverer and locator, and the date of such discovery." Section 2546 requires the discoverer, within 60 days from the date of discovery, to "cause such claim to be recorded * * * by a location certificate" containing certain facts. The posted notice provided for in Section 2548 is for the purpose, as stated in the section, of designating the location of the lode, vein or fissure discovered. The notice has no relation to the location certificate, except that it is to be posted before the filing of the latter. As observed in Lindley on Mines, (2nd Ed.) Sec. 355, the requirement of our

statute as to posting notice is a perpetuation of the custom that prevailed in the early mining history of the west, of posting a notice at some point on, or in close proximity to, the discovered lode, as the first step in appropriating the same, the purpose of which was to show the discoverer's intention to claim the vein to the extent described, and to warn others that it had been appropriated. In view of the object of the notice, as well under the statute as by the early custom, it is the universal rule, where neither the notice nor a copy of it is required to be recorded, that it is to be liberally construed, and its sufficiency, at least to accomplish the purpose intended, is a question of fact.

There were two notices left upon the claim to designate the second Little Joe location. One was written on paper by Woodruff, signed by Hunter and himself as locators, witnessed by one Newman, and was entitled "Location Notice." It was placed by Hunter in the ridge log in the shaft house, and an additional notice was written by Hunter upon a slab and placed where it could more readily be seen. The contents of the first notice, omitting the heading and signatures, were as follows: "I, the undersigned, have this 24th day of December, 1906, located and claimed 1,500 feet on this lead lode or mineral deposit, running 400 feet in an easterly direction and 1,100 feet in a westerly direction from this location notice; also 300 feet on each side of this location. Said claim shall be known as the 'Little Joe.'" The notice on the slab, as copied by McCoy, the surveyor, on February 14, 1907, when he went to the claim to survey the Merry Christmas, was as follows:

"Notice. We, the undersigned, did this 24th day of Dec., locate 1,500 feet of the lead vein or mineral, as follows: 400 feet in an easterly direction and 1,100 feet in a westerly direction from the discovery, with 300 feet on each side of this location notice. This shall be known as the Little Joe." It was signed in the names of A. M.

Woodruff and F. E. Hunter as locators, and by C. F. Newman as witness.

Two principal objections are urged against the sufficiency of these notices. First, that the date on the slab notice did not mention the year, and, second, that the name of the discoverer is not stated in either notice, the names of Woodruff and Hunter being signed only as locators, and there being no recital in the notice to designate them as discoverers. There is some conflict in the evidence as to whether the notice on the slab mentioned the year. Hunter states positively that it was inserted in the notice. McCoy and other witnesses produced by the plaintiffs testified that they saw the notice and failed to find any mention of the year in the date. At least one of such witnesses admitted that it might have been there and not easily observed, because of the fact that the notice was written with a pencil on a rough slab. Whether under the general finding it might be considered that the court passed upon the conflicting evidence in favor of the defendant, or that the preponderance is so strongly against the defendant on the point as to render such a finding improbable or unsustained by the weight of the evidence, we think not very material. The notice written on paper, and placed in the ridge log, contained the complete date, and in that respect was sufficient. Further, the evidence renders it clear that the locators of the Merry Christmas were not misled as to the date of the notice or the time when it was posted.

Under the circumstances the two notices should be considered together. The paper notice, as shown by the evidence, was stuck in the ridge log of the shaft house to prevent its being torn by the wind. That log, it appears, was situated directly over the shaft and only a few feet above the top of it, and the conclusion to be fairly reached upon the evidence is that the notice was not so concealed as to escape observation upon reasonable search. Although Cothern and Cannon testify that they did not see that notice on December 25, McCoy testifies that he saw it stuck in the ridge pole of the shaft house from a point

50 feet distant, where he was setting up his transit, when he went to the claim in February to survey the boundaries of the Merry Christmas, and called Cothern's attention to it, and read and copied it. Lindley states the rule to be that in the absence of any specific direction in the statute or district regulation prescribing the manner of posting, any device adopted will be sufficient, which would enable one seeking information in good faith to discover the existence of the notice. (1 Lindley on Mines, (2nd Ed.) Sec. 356.) In view of the situation, we think, that had the paper notice been the only one, it was sufficiently posted. It is unnecessary to determine whether the statute, in requiring the notice to be posted at the point of discovery, refers to the point where the lode is first discovered by the locator, or where the discovery shaft is sunk, in case the situation of the original discovery and discovery shaft are not identical, or whether either will answer the purpose of the statute. The location notice of both the second Little Joe and Merry Christmas were posted at the same place, while the discovery shaft of each claim was sunk a short distance therefrom—in the case of the Little Joe, about 60 feet, and of the Merry Christmas, about 50 feet. Therefore, if a proper construction of the statute, a question which we do not decide, would require the location notice to be posted at the discovery shaft as distinguished from the point where the lode was first discovered upon the claim, there would be the same irregularity in both the Little Joe and Merry Christmas location, which, if sufficient to invalidate either claim, would invalidate both, whereupon it would follow that the amended certificate of location of the original Little Joe would take effect as recorded before the existence of intervening rights, thereby curing the only defect suggested by this record as to that location.

Were both notices insufficient on the ground that they omitted the name of the discoverer? Counsel for the plaintiffs seems to understand the statute to indicate that the discoverer and locator may be different persons. We do not think the statute is to be so construed. In Section

2546 the "discoverer" is required to record a location certificate.   In the section providing for and prescribing the contents of the notice, (Sec. 2548) the "discoverer" is required to designate the location by posting the notice and performing the other specified acts.   In the section prescribing the procedure for locating placer claims, (Sec. 2553, as amended, Laws 1901, Ch. 100) the same provisions appear, but as to such claims it is provided that the notice shall state in addition to the name of the claim, date of discovery, and number of acres claimed, only the "name of the locator or locators."   Again, in Section 2550, it is provided that the "discoverer" of any mineral lode or vein shall have the period of sixty days from the date of discovery in which to sink a discovery shaft thereon.   Where a discovery is made by a prospector acting for himself and others, or in the exclusive interest of others, his discovery operates to their benefit for the purpose of a location, and, · within the meaning of the statute, they are discoverers, entitling a location to be made in their names. Since the statute throughout suggests that a location may be made only by the discoverer, and, in the section aforesaid, providing for posting notice, requires that the "discoverer" shall designate the location by posting a notice containing the "name" of the "discoverer and locator," we think that clearly the words "discoverer and locator," as there used, refer to the same person, and the person signing the notice of location is to be understood as claiming discovery, and to be both discoverer and locator.   Any other construction would not only be extremely technical, but, as occurs to us, without any good reason to support it. The notice itself is not evidence of a discovery; that fact must be otherwise shown.   It is to be observed that the notice on the slab stated the length claimed in each direction from "discovery," thus indicating a claim of previous discovery.

The fact that the notice may in fact have been posted after midnight of the date it bears, does not invalidate it, no fraud or fraudulent intent appearing, and the notice

having been posted before the initiation of the conflicting
or adverse claim.   Nor is there any force in the objection
that the date of discovery is not stated, for, under the
rule of liberal construction, the statement that on the
date mentioned the locators located and claimed the lode
to the extent described, is to be taken and understood
as the date of discovery, within the meaning of the statute,
and as inserted, to comply with the statute in that par-
ticular, the statement of no other date being required.
A notice under a similar statute in Colorado was held
sufficient which merely stated that "the undersigned claim
1,500 feet on this mineral-bearing lode, vein or deposit,"
and was dated and signed without specifically designating
the persons signing as either locators or discoverers.   (Er-
hardt v. Boaro, 113 U. S. 527.)

.5.   It is contended that the boundaries of the Little
Joe, under the second location, were not marked as re-
quired by the statute.   The evidence does not, indeed,
show a new or independent marking of the boundaries
of that location, but it does show by the location certificate
that the old boundaries as staked, marked, identified and
surveyed, were adopted, for that certificate conforms ex-
actly in its description by metes and bounds to that of
the amended certificate of the original Little Joe, which
was prepared in 1900, according to the survey then made,
and refers to and describes the same corner and side center
stakes.   The evidence is clear that in locating the second
claim it was intended to cover the exact ground embraced
in the former location, and there is no evidence that any
of the boundary posts or monuments had been destroyed
or removed.   Upon the authorities the adoption of the old
boundaries and boundary stakes or markings was per-
missible.   (Brockbank v. Albion Min. Co. (Utah) 81 Pac.
863; Conway v. Hart, (Cal.) 62 Pac. 44.)

In the California case cited, the court say:  "It appears
that the plaintiffs had located the claim now called the
"Belmont," several years prior to 1894, and had placed
stakes, with mounds of rock, etc., at each corner of the

surface ground and at the centers of the end lines, and
that when they concluded to make the second location,
under which they now hold, they found those stakes in-
tact, and adopted them,—their notice of location referring
to these stakes; and defendant contends that the location
was invalid because plaintiffs did not actually put up new
stakes.  This contention is not maintainable.  These stakes
so distinctly marked the location on the ground that its
boundaries could be readily traced, and this was all that
the statute requires.   As the stakes referred to already
stood at the proper places, it would have been a useless
work to have taken them out and put them in again,
or to have replaced them with other stakes."

The Utah case involved a claim that was a relocation
of one covering the same ground, but the necessity or
reason for the relocation does not appear from the opinion.
The court say:  "Corner monuments having formerly been
placed on the ground, and their locations corresponding
with the calls in the notice, the locator, under the circum-
stances, had a right to adopt those monuments by repair-
ing or reconstructing them, as was necessary, and the
notice of location could properly be made to refer to the
boundary monuments or stakes of the previous location."

The object of the requirement for marking the boundaries
is said to be "to fix the claim, to prevent floating or swing-
ing, so that those who in good faith are looking for un-
occupied ground in the vicinity of previous locations may
be enabled to ascertain exactly what has been appropriated,
in order to make their locations upon the residue.   It also
operates to determine the right of the claimant as between
himself and the general government."   (1 Lindley (2nd
Ed) Sec. 371, and cases cited.)   The local statute was,
no doubt, enacted with reference to the provision of the
United States statute, that "the location must be distinctly
marked on the ground so that its boundaries can be readily
traced," and to more definitely prescribe the manner of
marking the location.   The purpose of the requirement
under either statute is that of identification, and, perhaps,

also facility of description, but it does not include the idea of improvement or development, or primarily the expenditure of time and labor. It is true, of course, that ordinarily time and labor will necessarily be expended in complying with this requirement, but that is clearly not the underlying object. If the location is in fact marked in the manner provided, it does not occur to us as important whether the marking has been accomplished through the process of erecting new stakes or monuments, or by adopting and using those, if any, already at the proper places and conforming to the statutory specification.

The statute, it is true, contains an express permission to adopt old boundaries only in case of the relocation of an abandoned claim. (Rev. Stat. Sec. 2552.) That provision, however, is not found in the section which directs that the boundaries be marked in a particular manner, nor in a section specially regulating that subject, but in a separate section permitting and providing for the relocation of abandoned claims, and is not to be construed as excluding the right in every other case to adopt old boundaries and boundary stakes. It declares a rule, even as to abandoned claims, which would exist independent of statute. There was no such permissive statute in California or Utah where adoption of old boundary stakes was held competent. We are unable to observe any distinction upon principle in this respect, whether the ground is open to relocation because of the abandonment of the old location, or the non-performance of all the location acts within the statutory period, or for any other reason, if the boundary stakes are at the disposal of the new locator; and, if the latter may lawfully remove the old stakes, there seems to be no reason preventing him from allowing them to remain to define the same boundaries of the new location. At any rate, so long as they remain and do in fact actually represent the respective corners and other points of the new location requiring such designation, and are adopted as such, it is unreasonable to say that they do not mark the location or boundaries.

Though Woodruff does not appear to have been a lo-
cator of the original Little Joe, he claims to have been
interested in its protection in connection with other claims
of the group. He testified with reference to making the
new location: "I wished to protect the property. We had
held it so many years, we wanted to protect it, and there
was a little technical error there and we wanted to pro-
tect it." He also testified that he and his associates had
never abandoned any of the claims. Hunter, who joined
in the new location notice, though afterwards not named
as a locator, was one of the original discoverers and locators
of the claim, and he certainly assented to the method
employed for protecting the property through the new
location. There is nothing in the evidence disclosing an
objection at any time on the part of any locator under
the original location to the action of Woodruff in the
premises. It is true that the legal title under the new
location became vested in Woodruff alone, but he joined
the former locators in conveying it, and the facts sufficiently
show, for the purposes of this case, that he held it partly.
in their interest. It appears by Woodruff's testimony that
he assisted in the survey of this claim and the others, in
June, 1900, and, therefore, it is to be understood that
he was familiar with the boundaries and boundary stakes.
If consent of the record owners of the Little Joe under
the previous location was essential to the adoption of the
boundary stakes to mark the new location, which we se-
riously doubt, such consent may be fairly implied from the
evidence in this record.

It is true that there is no evidence that Woodruff ex-
pressed to any one an intention to adopt the old stakes.
But his acts are as effectual as spoken words to show the
fact. It appears that the new location was intended to
cover the territory of the old location. The location no-
tice indicates this, as well as the testimony of Hunter and
Woodruff. The location certificate, filed for record by
Woodruff a little over a month after the location notice
was posted, so describes the location and claim as to leave

no doubt that, it refers to the same lines and corners as those of the old location. And as a part of the description, the certificates under both locations show the location of the corners by reference to the same natural objects. For example, it is recited in each that "From the N. E. corner No. 1, a 14-inch stump, 5 feet high, bears S. 70° W., 27 feet. From the S. E. corner No. 2, a 12-inch spruce tree bears N. 13° E., 15 feet." The tree thus referred to is called in one certificate a "spruce" tree, and in the other a "pine" tree. The remaining identifying objects are similarly described in both certificates, and the fact is unmistakable upon the evidence, that at the time of the new location, as well as when the survey was made, in June 1900, the said corners and side center points were marked by the stakes of the former location. As the intention to perform all necessary location acts under the new location is clear, and new stakes were not erected, but the location certificate refers to and describes those already in place, it appears to the court that nothing further is needed, in the absence of contradictory evidence, to show an adoption of the old stakes. A statement by Woodruff at the time of such intention would have added little, if any, force to the evidence, though it might have explained what is apparent without it. The fact becomes, if anything, more evident when the condition of the ground at the time is considered. It was covered with snow, and at places to a depth of four or five feet, rendering the staking of the claim at that time very difficult, if not impracticable. Indeed, it appears that the locators of the Merry Christmas did not succeed in February in driving some of their stakes into the ground, in consequence of the great depth of the snow. In this respect the case is somewhat similar to the Utah case above cited.

In the California case of Conway v. Hart the adoption of the stakes marking the former location was shown by the location notice. The location certificate of the new location of the Little Joe does not state that it is a relocation of an abandoned claim, nor was the old claim con-

sidered as abandoned by any voluntary act of the locators, or at all. The new location was made in view of the defect in the location certificate of the old location, and Woodruff, presumably, having an interest in protecting it, deemed it best to take the precaution of going through the process of a new location, rather than take the chances of a conflicting location by others. Surely he, or the original locators, had as much right as others not interested in any way in the claim under the former location to relocate or make a new location of the ground. This is not a case of relocation after a failure of the original locator to perform the required annual development work. A doubt has been expressed as to the right of the delinquent locator in such case to make a relocation, on the theory that such forfeiture is not complete until some one else has appropriated the property, and that, with a right in the locator so in default to relocate, he could take advantage of his own positive wrong and hold the property indefinitely through successive relocations without the development work required by law. (1 Lindley on Mines, (2nd Ed.) Sec. 405.) Whatever the correct rule in such a case, it is not decisive of the question upon the facts in this case, for, if the ground was open to relocation, that resulted from a failure to complete the original location in the manner provided by statute, and then not through any positive wrong or intentional neglect, but through mistake or inadvertence, while considerable development work and all that the law required had been done. That being the condition, the right of the former locators, or another for their benefit, to protect their interest by a new location seems clear. (Id.; Lockhart v. Johnson, 181 U. S. 516.) To deny such right would be both unjust and unreasonable.

6.  Having thus disposed of the objections raised against the location acts under the second location of the Little Joe claim, it will be in order next to consider whether the acts of the plaintiffs and their co-locator in connection with the location of the Merry Christmas gave them any right to the ground in support of their present claim of

title. Counsel for defendant contend that the location of plaintiffs was at no time valid. That contention is based upon several grounds. First, that when they posted their location notice the territory had been appropriated through the second location of the Little Joe, if then open to relocation at all. Second, that no valid discovery was made to support the Merry Christmas until after the recording of the amended certificate of the Little Joe as originally located, and the certificate of the second location. Third, that the boundaries of the Merry Christmas were not marked in the manner required by law.

Construing the statutes relating to the location of mining claims upon the public domain, it was held by the Supreme Court of the United States in Belk v. Meagher, 104 U. S. 279, that a relocation of lands actually covered at the time by another valid and subsisting location is void, not only as against the prior locator, but all the world. In that case a relocation of mining ground initiated prior to the expiration of the statutory period for performing the annual labor required by law upon the senior location was held to be void, and the one making the relocation was held to have acquired no right under it at the time it was made, or to take effect when the forfeiture of the senior location occurred, but a third party who made a location after the forfeiture was held entitled to the premises. The court said: "Congress has seen fit to make the possession of that part of the public land which is valuable for minerals separable from the fee, and to provide for the existence of an exclusive right to the possession, while the paramount title to the land remains in the United States. * * * The right to possession comes only from a valid location. * * * A location to be effectual must be good at the time it is made. When perfected it has the effect of a grant by the United States of the right of present and exclusive possession. * * * Congress has said in unmistakable language that what has once been located under the law shall not be relocated until the first location has expired."

That case was followed in numerous decisions in the federal and state courts, and the principle announced had for many years been regarded as well settled, until Lavagnino v. Uhlig, 198 U. S. 443, was decided in 1905. Broadly construed, the reasoning employed in the opinion in that case seemed to disregard the doctrine of Belk v. Meagher, and much uncertainty arose as to whether it was not impliedly, at least, overruled or repudiated. In a majority of the cases in the state courts, wherein Lavagnino v. Uhlig was considered, it was held to be limited to its own peculiar facts and circumstances. Such construction was assisted by the case of Brown v. Gurney, 201 U. S. 184, decided in 1906, which was regarded as necessarily affirming the doctrine of Belk v. Meagher. (Montagne v. Labay, 2 Alaska, 575; Nash v. McNamara, (Nev.) 93 Pac. 405; Lockhart v. Farrell, (Utah) 86 Pac. 1077. See also Hoban v. Boyer, (Colo.) 85 Pac. 837; Helena Gold & Iron Co. v. Baggaley, (Mont.) 87 Pac. 455; Ambergris Min. Co. v. Day, (Ida.) 85 Pac. 109.)

The question again came before the Supreme Court in the case of Farrell v. Lockhart, 210 U. S. 142, whereupon, in consideration of the serious and unfavorable consequences on rights of property which had been suggested would follow from the reasoning in the case of Lavagnino v. Uhlig, when broadly construed, it was held that the opinion in the case should be qualified. In qualifying that opinion the court took into view the prior decisions of Belk v. Meagher, *supra,* and Brown v. Gurney, *supra,* and, as qualified or modified, the principle announced in Belk v. Meagher and applied in Brown v. Gurney was left unaffected, except that an actual abandonment of a senior location prior to the expiration of the period for the performance of annual labor thereon will cause the ground to become a part of the public domain, authorizing a relocation after the abandonment without waiting for the expiration of the period for the performance of the annual labor. The principle is, therefore, as firmly established as before, that a location is void which is made upon ground

covered at the time by a prior, valid and subsisting loca-
tion.    (Swanson v. Kettler, (Idaho) 105 Pac. 1059.)

What constitutes a valid subsisting location within that
principle, or to state it more definitely, at what stage in
the location proceedings the ground becomes segregated
from the public domain, so as to invalidate a junior con-
flicting location from the beginning, is a question upon
which there is not a uniformity of decision.   In Colorado
it is held that a notice properly made and posted upon
a valid discovery constitutes an appropriation of the ter-
ritory therein specified, so that during the period allowed
for performing the other acts required to designate the
location, no one can initiate a conflicting location which
would be rendered valid by the mere failure of the first
locator to perform the other necessary acts within the
time prescribed by law.   (Omar v. Soper, 11 Colo. 380;
Sierra Blanca Min. & Reduction Co. v. Winchell, 83 Pac.
628.)   In Erhardt v. Boaro, 113 U. S. 527, it was held
that a location notice claiming 1,500 feet on "this mineral-
bearing lode, vein or deposit," was to be limited to an
equal number of feet on the course of the lode or vein in
each direction from the discovery point, and to that extent
it was sufficient as a notice of discovery and location, and
that during the period prescribed by statute for more com-
pletely designating the location the locators were entitled
to such possession as would enable them to make the neces-
sary excavations and prepare the proper certificate for rec-
ord.   The suit was one brought by the prior locator against
others, who, after the posting of the prior location notice,
and within the period for completing the location, entered
upon the ground, removed the prior notice, posted at the
same point a notice of their own location, and maintained
possession by threats of violence to the prior locator, thereby
preventing him from sinking the requisite discovery shaft
during the statutory period, though he had caused the
boundaries of his claim to be secretly marked, and a lo-
cation certificate to be recorded.   The court said that as
against the defendants the plaintiffs were entitled to be

reinstated in the possession of their claim, and "they could not be deprived of their inchoate rights by the tortious acts of others; nor could the intruders or trespassers initiate any rights which would defeat those of the prior discoverers."

The rule adopted in Nevada is that where the prior locator posts the requisite notice, and properly marks the boundaries of the claim within the statutory period, the ground becomes segregated from the public domain from the date of posting the notice, so that during the statutory period for perfecting the location, the area embraced in the claim will not be open to location by others, or until after a failure to do the other work required to be done within such period. (Nash v. McNamara, *supra*.) In Montana the mere posting of a location notice, under which the locator might, within the statutory period for completing a location, swing his claim in any direction, is not sufficient to withdraw absolutely from the public domain the extent of territory claimed by the notice to have been located. In so deciding the court referred to the case of Lavagnino v. Uhlig, *supra*, as authority for the conclusion, and upon the reasoning of the opinion, we think, it is to be understood that the Montana court would hold that the area embraced within a mining claim does not become appropriated ground so as to invalidate a junior location until the senior location is completed by performing all the necessary location acts.

In the case at bar, it appears that the very place at which the senior locators posted their notice was attempted to be appropriated by the junior locators, for their notice was posted at the same place and they adopted or claimed the same point of discovery, and it is clear that the junior locators understood perfectly what ground was intended to be located under the prior location, and the boundaries thereof were definitely marked. The junior locators also sunk their shaft in such close proximity to the old discovery shaft, as well as the discovery shaft of the new location, that they must have known, and, indeed, the evidence

shows that they did know, that it was within the limits
of the ground claimed under the senior notice. That the
posting of the senior location notice, based at the time
upon a valid discovery, entitled the locators to such .pos-
session during the statutory period as would enable them
to complete the location by performing the necessary acts
is clear, and they might have maintained a suit to recover
possession if excluded therefrom.

But whether that right of possession, even with the
boundaries of the location marked, causes a segregation of
the territory from the public domain so that it may not
be legally located by others during the statutory period
aforesaid, is a question that need not be decided. A right
to public lands cannot be acquired by trespass, and an
entry upon the prior possession of another is a trespass
tending to breaches of the peace, and should not be en-
couraged. It is unnecessary to decide whether a discovery
and posting of notice elsewhere upon the claim than the
place where plaintiffs did post their notice and claim dis-
covery would have constituted a trespass such as to make
ineffective their effort to initiate a relocation. We do not
think it possible that two competing location notices, posted
at identically the same place, covering and claiming the
same point of discovery, can both be valid during the same
period of time. One must give way to the other. The
prior notice, if sufficient in form and based on a valid dis-
covery, necessarily has precedence, and entitles the dis-
coverer and locator to the sole benefit of the discovery
at that point during the period for completing his loca-
tion, unless he abandons it in the mean time. During
such period the same discovery is not subject to appro-
priation by another for the purpose of initiating a right
by location. The act of plaintiffs and their then associate
in posting their notice at the place where they found the
notice of Hunter and Woodruff was clearly a trespass
upon the possession and rights of the latter, and quite
as ineffectual to give them any right as it would have

been if they had, in addition to posting their notice, destroyed or removed the prior notice.

However, it has been repeatedly held that when a location is perfected it has the effect of a grant by the United States of the right of present and exclusive possession. (Belk v. Meagher, 104 U. S. 279; Noyes v. Mantle, 127 U. S. 348; Manuel v. Wulff, 152 U. S. 505.) In addition to posting a sufficient notice, the boundaries of the new location of the Little Joe were sufficiently marked through the adoption of the old stakes and monuments, and, within the statutory period, the requisite discovery shaft was sunk upon the claim, and a sufficient location certificate recorded. Whatever inchoate rights, if any, had previously been secured by the attempted location of the Merry Christmas claim were then at an end, and the location acts in connection with that claim became of no more effect than if they had never been performed. By posting the location notice of the Merry Christmas and the sinking of the discovery shaft, no present rights, if any, were acquired that were not subject to the right of the prior locators to complete their location, and therefore, whatever rights were acquired necessarily became divested upon the completion of the senior location, and would not be revived by any subsequent forfeiture or abandonment of the senior location. The boundaries of the Merry Christmas were not surveyed until after the new location of the Little Joe had been perfected, and therefore added nothing in support of the location.

7. Having acquired all the title of the locators of the Little Joe claim under either location, it was competent for the defendant to record the additional or amended certificate of April 12, 1907, and claim thereby an original discovery made September 16, 1897. It appears that such amended certificate as to each of the three claims of defendant was signed in its name by its attorney, who testified that he did so by virtue of a power of attorney which had been filed in the land office. Whether there was authority for such signing or not is a matter in which

the plaintiffs are in no manner concerned. But by offering the certificates in evidence and relying upon them, the defendant. has shown a ratification of the act of its agent, even in the absence of original authority.

8. The question remains. to be considered whether the evidence is sufficient in a suit of this character to sustain the judgment in so far as it adjudges the right of possession in the defendant to the Modoc and Little Wonder claims. It is to be remembered that the parties understood the contest to affect principally the Little Joe location, and for that reason, perhaps, the facts concerning the location of the other claims of the defendant were not brought out as definitely as they, no doubt, might have been. Yet, we think the evidence sufficient, since there was no affirmative evidence produced by the plaintiffs that the necessary acts of location respecting those claims were not performed and within the proper time, and no attempt by cross-examination of the defendant's witnesses or otherwise to question the validity of those locations, except as to the sufficiency of the location certificates. In the case of the Little Wonder, Mr. Hunter, one of the locators, testified that the claim was located and a shaft put down and the stakes kept up, the assessment work done each year, and that mineral was discovered where the location notice was posted, in a well defined vein, carrying copper. As to the Modoc, the same witness testified that it was located in 1899, that mineral in place was discovered on the claim, the required assessment work done, and that the ground had never been abandoned.

Mr. Woodruff testified that there is a lead on each claim showing copper and gold, that all work was done on all the claims as the law required, and that they had never been abandoned. Both Hunter and Woodruff were locators of the Little Wonder and Modoc claims. In this connection the testimony of Mr. McCoy, the surveyor, is to be considered, to the effect that in June, 1900, the stakes were all in place, marking the boundaries of each of the three claims, the Little Wonder, Modoc and Little Joe. The

map, prepared by him and produced in evidence by the plaintiffs, designates a discovery shaft on each claim, and the point where the same is situated, and the amended certificates prepared by him and recorded, shows the length of the claims, respectively, each way from the center of the discovery shaft. It is true that the testimony does not show the depth of the shaft of the Modoc or Little Wonder, nor the contents of the location notice posted on either claim, and does not definitely show the posting of any location notice upon the Modoc. But in the absence of any attempt to show that the discovery shaft upon either of those claims was not sunk a requisite depth, or to question the posting of the requisite location notice, we think the evidence is to be deemed sufficient *prima facie*. The location certificates had been on record several years prior to the attempted location of the adverse claim, and they took the place of the location notices, rendering proof of the posting of the notices unnecessary as against the adverse claimants. (Treasury Tunnel &c. Co. v. Boss, (Colo.) 74 Pac. 838.)

9. The original location certificates of the Modoc and Little Wonder claims were objected to. The only objection here urged against those certificates is that they each failed to give the length of the claim along the vein each way, measured from the center of the discovery shaft, or the general course of the vein as far as it was known. This objection was not made when the certificates were offered in evidence, and the objections which were made appear to have been abandoned. However, as to the present objection the certificates are, in our opinion, sufficient. The certificate of the Modoc uses the words "Location shaft" instead of "discovery shaft," in giving the length of the claim in each direction; while the point from which the length is measured each way is designated in the certificate of the Little Wonder as the "Location." It was evidently the intention to give the length of the claim each way from the center of the discovery shaft, as required by the statute, and we think the "location shaft" in one certificate and

"location" in the other, is to be understood as referring to and as meaning the discovery shaft. The certificates would naturally be so construed. Any other construction would be sacrificing substance to mere form. We are the more inclined to a liberal construction of these certificates from the fact that the location certificate of the Merry Christmas describes that claim as lying south of the Little Wonder and Modoc lodes, thereby recognizing them as well known, if not, indeed, valid and subsisting, mining claims.

Without considering the remaining objections urged by defendant against the validity of the Merry Christmas location, we conclude, for the reasons above stated, that the evidence establishes the defendant's right of possession and the judgment will be affirmed.

BEARD, J., concurs.

SCOTT, JUSTICE. (Concurring.)

I concur in the conclusion reached in the opinion this day filed. The Merry Christmas location, upon the facts, falls clearly within the rule that a junior locator can not enter and initiate a valid location upon mining ground in the occupancy of and during the time allowed a prior discoverer to complete his location. The conclusion is predicated in the opinion upon a discussion of the notices posted at the shaft house of the old Little Joe, and, in my opinion, those notices should be construed in their true light in order that it may be made plain and thus avoid any error that parties might fall into by reason of any inference that might be drawn from the opinion based upon the facts as therein stated. The posting of the notices at the shaft house of the old Little Joe, in my judgment, was not, upon the facts, a compliance with the statute, even if they were intended as the statutory notice required to be posted at the point of discovery as preliminary to the filing of the certificate of location. (Sec. 2548, R. S. 1899; pages 34 and 36, Morrison's Min. Rights, (13th Ed.).) Neither of the locators based their location on or adopted that discovery,

(McMillan v. Ferrum Min. Co., 32 Colo. 38, 105 Am. St. Rep. 64, 74 Pac. 462; Strepy v. Stark, 7 Colo. 618; Cheeseman v. Shrieve, 40 Fed. 718, 17 M. Rep. 260) or designated it as such in their recorded certificate. The discovery shafts were sunk, one 50 and the other 60 feet away from the place where and after the notices were both posted.

The notices designated the discovered vein, but I do not agree that they designated the location of that vein. The evidence shows that discovery was made in each shaft, the one in the shaft of the new Little Joe being prior in point of time. As I read the recorded certificate of that location it was based upon discovery in the shaft sunk by Woodruff. It is too well settled to need discussion, that without such discovery the location would be invalid. The nature of the notices must be determined in the light of the conditions existing at the time of posting. I agree that the contents of such notices should be liberally construed, and I think, upon the facts, the notices here so construed in connection with the place where they were posted, fails to bring them within the provision of the statute. A strict construction as to their contents would render them void for any purpose. Mr. Morrison says, at page 34 (13th Ed.) of his work on Mining Rights, that "As soon as a vein is found by a prospector it is the custom to place at the point of discovery a notice," and gives a form of such a notice, and further on says, "This is not the notice when the location is made," and cites Erhardt v. Boaro in support of this proposition. In that case the notice was posted on an outcrop, which point was selected for making the excavation required by the statute, and the contents of the notice was held sufficient to protect the discoverers in making their location. The parties here were not locators at the time of posting their notices. The ground had not been located by them. Their attitude toward the ground was that of discoverers. They could proceed to locate the ground or not. Taking discovery as the starting point, it must be followed by appropriation. The two together constitute the source of title to a mining claim. The

statute does not require a notice to be posted at the time of finding the vein. At the time the notices were posted they had no more force and effect than to warn others that those whose signatures were affixed thereto had acquired a prior right to locate on the vein. Under the statute, Hunter and Woodruff then acted as discoverers. The statutory notice is required to contain the name of "the discoverer and locator." (Sec. 2548, R. S. 1899.) The discoverer must have changed his attitude toward the ground at the time of posting the statutory notice, for he must then be a locator as well as a discoverer. It is said in Treasury Tun. Min. Co. v. Boss, 32 Colo. 27, 74 Pac. 888, 105 Am. St. Rep. 60, that "One object of the requirement that the discoverer shall, before filing his location certificate, post at the point of discovery a notice, is that those wishing to make subsequent locations may be advised of the ground already appropriated and this serves to hold the ground until his location is perfected within the statutory period," and also "that when filed in the proper office, the certificate takes the place of the notice on the ground," for the reason that the certificate contains, in addition to other data, precisely the same things which the posted notice is required to contain. The dissimilarity between the notices here posted at the old shaft house and the certificate required by the statute is apparent, for the latter is required to state "the length of the claim along the vein, measured each way from the center of the discovery shaft." The discovery shaft of the new Little Joe is separate and distinct from the old shaft. For the reason that the certificate of location of the original Little Joe failed to state the length of the claim each way from the discovery shaft, this court held it to be void, in Slothower v. Hunter. The statutory notice is required to be placed on the surface at the point of discovery to designate the location, and I think that the word designate, as thus used, means more than the claim of right to locate upon the discovered vein. There can be no point of discovery until discovery has been made.

One may discover or find a mineral vein, but that does not ·of itself constitute discovery within the meaning of the law, for discovery includes the elements of geological for- :mation, value and character of the vein matter. Under all the decisions upon a statute similar to ours, that point where the discovery is made by means of a shaft or its equivalent must necessarily be designated in the location certificate, and is the point upon the surface above the exposure of the ·crevice or lead matter in the discovery shaft or excavation, and which exposure must be at least ten feet below the lowest part of the rim rock. It is this exposure of the vein upon which the location is based. (Beals v. Cone, 27 Colo. 473, 83 Am. St. 92, 62 Pac. 948.) It is the initial point of the completed location, and I am of the opinion that the posting of the statutory notice at that point is what the statute intended in order to designate such location. This has long been the rule, supported by an unbroken line of decisions in Colorado, upon a statute almost identical with our own. It seems to have resulted in no hardship, nor has it caused any great amount of misunderstanding among the miners as to the method of protecting their rights. It is a simple method. It con- sists merely of a posting of the statutory notice at the place selected by the locator for sinking on the discovery vein. The failure to post such statutory notice at the dis- covery shaft of the new Little Joe did not, however, invalidate that location, for the certificate was filed for record in the absence of any intervening right, and the record thus became notice to the world of what ground had been appropriated and segregated from the public domain. (Treasury Tun. Min. Co. v. Boss, *supra.*)

The dismissal of the consideration of this question upon the ground that both parties posted their notices at prac- tically the same point seems to me not only misleading, but in effect carries the idea that it is within the power ·of the discoverer to disregard this mandatory provision ·of the statute in making his location. I am of the opinion that the question is here for consideration. It was in

issue upon the pleadings, and the parties respectively here urge, upon the evidence, that in so far as it affects their title the notices were sufficient in form and sufficiently posted. Because they have limited their arguments to the question as to whether the posting upon the ridge pole of the paper notice of the Little Joe was a sufficient posting, does not exclude this court from, but rather impels, a consideration as to whether it was a sufficient posting under the statute. As both parties claim a compliance with the statute in posting their notices, and all of the notices were posted at the old shaft house, the consideration of the sufficiency of the posting of one notice necessarily calls for the consideration of the sufficiency of the posting of all. The parties have elected to treat their notices as the notices required by the statute, and the statute provides for posting no notice other than the one to be posted at the point of discovery prior to the filing of the certificate of location for record. It is true that the statute gives the discoverer of a vein 60 days within which to sink his discovery shaft and the same time within which to properly designate his claim and record his certificate. Conditions might arise whereby this grant of possession or right of possession would terminate before as well as after the expiration of such period.

I express no opinion as to the effect of recording the amended certificate on January 9, 1907. We are agreed that Woodruff's location of the new Little Joe was a valid location. For the reasons stated in the opinion, the possessory title was thereby vested in him for the benefit of the locators of the original Little Joe. By their deed, in which Woodruff joined as grantor, and their grantee's deed, the defendant in error became vested with the right of possession to the ground in dispute subject to the paramount title of the United States.