McEvoy and others *v.* Hyman.

*(Circuit Court, D. Colorado.  December 7, 1885.)*

Mines and Mining Claims—Location of Claim—Notice—Description—Right to Amend.

The first record of a mining claim is usually, if not always, imperfect, and it is the policy of the law to give the locator an opportunity to correct his record when defects are found therein, and when it is so corrected the amendment takes effect with the original as of the date thereof.

At Law.

*Patterson & Thomas*, for plaintiffs.

*H. M. Teller* and *Charles J. Hughes, Jr.*, for defendant.

HALLETT, J.  Ejectment to recover a mining claim called "Little Giant," located by plaintiffs on the public lands, in the month of January, 1880. Defendant asserts title to part of the same ground under another location made in the month of October, 1879, and called "Durant." As it is of earlier location, the latter must be of superior force, if it was regularly made and properly maintained to the time this suit was brought. That the locators of the Durant went upon the ground in August, 1879, and opened the vein in the manner and to the extent prescribed by statute is fully shown. It seems that the vein crops out in places on the surface of the mountain in a way to show it is a strike for a long distance. Before August, 1879, two locations had been made on the vein in the lower part of the mountain; of these locations, the one furthest north was made by the locators of the Durant, and called "1,001." Following that in a southerly direction was the Spar claim, located by Philip W. Pratt and others. Near the southerly end of the Spar claim the vein came to the surface, and there, with the consent of the owner of the Spar, the locators of the Durant made their discovery opening, a cut 13 feet or more in depth. To enable the Durant men to put their discovery in that place, the Spar owners gave them permission to move the Spar stakes to the north, so as to exclude from the Spar claim the ground where the discovery cut of the Durant was made; and there is evidence to the effect that this was done. Some witnesses, however, testify that the Spar stakes remained in their original position during the following winter, and perhaps a longer time.

The circumstance that the Spar people did not afterwards make claim to that part of the vein, and excluded it from their application for patent, sufficiently proves that they had relinquished it to the locators of the Durant; and whether the Spar stakes were reset in the fall of 1879 is not, under the circumstances disclosed by the evidence, an important fact in determining the rights of parties to this controversy. The Spar location was not then complete; no record had been made of or concerning it, and the change of lines did not encroach on territory previously appropriated by others. When they first entered on the ground, the locators of the Little Giant had actual notice of the Durant location in a way to put them upon inquiry touching its force and validity, and they openly and anxiously sought to find some defect in it. Under these circumstances, if they failed to make full inquiry, or too readily accepted the position of the Spar stakes as evidence of invalidity in the Durant claim, they cannot now be heard to say that they were misled to their prejudice. It may be only a question of fact whether the Durant location was founded on a discovery and work done within the limits of the Spar claim; but if it is more, and the plaintiffs could, under some circumstances, say that they were misled by the position of the Spar stakes, it cannot be so here. Inquiry of the Spar owners, the parties chiefly concerned in any attempt of others to take away Spar ground, would have set the plaintiffs right; and the omission to make such inquiry was of their own negligence. Assuming that the discovery cut of the Durant was, by the relinquishment of the Spar owners, in ground free and open to occupation, the next question in the order of objections made by plaintiffs is whether that claim was properly marked on the ground. On this point there is a great mass of testimony from both parties; on behalf of defendant, to the effect that stakes were properly set as required by the statute of the state (Gen. St. 723) in the autumn of 1879, when the location was made; that these stakes were seen by disinterested parties in the same year, and after the locators of the Durant had departed from the district, and by other persons in the spring and summer of the year 1880; and the stake at the south-east corner was found when the survey was made, in the month of May, 1881. On behalf of plaintiffs the testimony is that diligent search was made in the direction in which the claim was supposed to extend, by quite a number of persons, at various times during the year 1880, and no stakes could be found. In this conflict of testimony, it is only necessary to say that the weight is with the defendant. Assuming that all the witnesses were equally worthy of credit, those who testify affirmatively that they put the stakes in position, or that they saw them in place, must be taken to have better knowledge of the subject than those who say that the stakes could not be found. It appears that some of the witnesses who were unable to find stakes examined the ground in winter, when the snow must have obstructed the view, and the circumstances attending the inspection of others

may not have been favorable to a correct result. Upon the evidence, I conclude that the boundary stakes of the Durant were properly set when the location was made.

As the Little Giant was located in January following, no question is presented as to diligence on the part of the locators of the Durant in keeping the stakes in position. Whatever the duty of a locator of a mining claim as to maintaining his stakes, having set them up in the autumn, he cannot be expected to renew them in January following.

In the course of testimony at the trial, a question was made whether the notice posted at the discovery cut of the Durant gave the direction of the vein; but it was conceded in argument that the statute did not require it. The notice at all times maintained at the discovery cut seems to have been full and complete under the statute, and no point is now made against it. The chief objection to the Durant location is founded on the original certificate, which was filed for record in the proper office November 20, 1879. This, it will be observed, was before any step was taken towards the location of the Little Giant, and the objection is not as to the time it was made or filed for record, but it is said that the ground now claimed as the Durant location is not described in it, and it contains no reference to a natural object or permanent monument, as required by section 2324 of the Statutes of the United States. The description in the certificate is as follows:

"Beginning at corner No. 1 south-west, thence east, 63 degrees south, 300 feet, to stake No. 2; thence north, 27 degrees east, 750 feet, to stake No. 3; thence in the same course 750 feet, to stake No. 4; thence west, 63 degrees north, 300 feet, to stake No. 5; thence south, 27 degrees west, 750 feet, to stake No. 6; thence in the same course 750 feet, to place of beginning. Said lode situated on Aspen mountain. Discovered August 13, 1879. Work done by open cut, twelve-foot face."

Beginning at the south-west corner, as it was actually located in the survey for patent, and following the description as given in the certificate, the claim assumes a rhomboidal shape, extending somewhat south and west of the survey as made, and embracing little more than one-half of the territory covered by the patent survey. It excludes the south-east corner stake and the discovery cut. To avoid this result the surveyor who made the patent survey read the first course in the certificate, which is the south end line of the claim, as south 63 degrees east, instead of east 63 degrees south, as written; and the third course, which is the north end line of the claim, as north 63 degrees west, instead of west 63 degrees north, as written. So understood, the courses are approximately correct, but it is still necessary to allow something like four degrees in all the courses for the inaccuracy sure to occur in the rude efforts of miners to give courses and distances. In the amended survey the first course is south 58 degrees 52 minutes east, and the second course is north 31 degrees 8

minutes east, and so on. In support of his interpretation of the description in the certificate the surveyor says that the intention of the locators to make the claim rectangular in shape is clearly apparent, and he was governed by the only monuments that could be found,— the south-east corner stake and the discovery cut. The reason last stated appears to be sufficient, for monuments are to be followed in preference to courses and distances when the latter do not agree with the former. *Pollard* v. *Shively,* 5 Colo. 309. And I think the discovery cut is to be recognized as a monument so far, at least, as to include it within the claim. When the point of discovery is marked, as required by statute, to exclude it from the claim would be most extraordinary. For, as the discovery is essential to a valid location, it must be presumed that the locators intend to secure that point in preference to all other parts of the claim. The lines as drawn by plaintiffs from the certificate alone exclude the only ascertainable monuments, and that is sufficient ground for rejecting them and sustaining the patent survey. So understood, however, the certificate is still defective; for, as we have seen, the courses and distances were not correctly given, and it contains no reference to a natural object or permanent monument, as required by section 2324 of the Revised Statutes of the United States. By one section of the statute of the state a certificate so defective is declared to be void, but another and subsequent section gives the locator or owner of a claim the right to amend such defects. Gen. St. § 16, p. 722, and section 25, p. 724. See, also, this statute, as first enacted by territorial assembly, tenth session, 186.

The section relating to amendments is as follows:

"Sec. 25. If at any time the locator of any mining claim heretofore or hereafter located, or his assigns, shall apprehend that his original certificate was defective, erroneous, or that the requirements of the law had not been complied with before filing, or shall be desirous of changing his surface boundaries or of taking in any part of an overlapping claim which had been abandoned, or in case the original certificate was made prior to the passage of this law, and he shall be desirous of securing the benefits of this act, such locator, or his assigns, may file an additional certificate, subject to the provisions of this act: provided, that such relocation does not interfere with existing rights of others at the time of such relocation; and no such relocation, or other record thereof, shall preclude the claimant or claimants from proving any such title or titles as he or they may have held under previous location."

It will be observed that the section provides for correcting errors and defects in a certificate of location as well as for changing the boundaries so as to take in territory not before embraced in the claim. Doubts have arisen as to whether the proviso in relation to existing rights is applicable to the clause which refers to errors and defects in the certificate. The better opinion appears to be that the proviso relates only to the matter of taking into the claim new territory. Apparently that was the matter to which the attention of the legislative assembly was chiefly directed. It is perhaps unfortunate that the

question of amending a certificate and of changing the boundaries of a claim, which amounts to a relocation, should be expressed in general terms relating to both subjects, and in one section of the law. But the confusion resulting from such an attempt should not obscure the purposes of the law. Errors and mistakes in certificates of location are of frequent occurrence. Under the law as it is at present a full, complete, and unimpeachable certificate cannot be made without the aid of a surveyor and the best instruments; and, with such aids, the surveyors often disagree, and time and labor are required to decide between them. Of course, it is often, and perhaps generally, impracticable to obtain the services of a surveyor in making a location, and the miner must depend upon his own skill and judgment. In such effort he usually fails. Indeed, it may be said as to the course of his lines he is always in error; and the natural object and permanent monument required by section 2324 of the Revised Statutes are entirely beyond his grasp. He does not know what they are, or how to refer to them. Every one who is at all familiar with mining locations knows that, in practice, the first record must usually, if not always, be imperfect. Recognizing these difficulties, it has never been the policy of the law to avoid a location for defects in the record, but rather to give the locator an opportunity to correct his record whenever defects may be found in it. Such seems to be the meaning of the first clause of the section above. If, at any time, a certificate shall be found defective or erroneous it may be amended; and section 16 of the same act, which declares that defective certificates shall be void, when read in connection with this section and qualified by it, will be understood as saying that defective certificates are lacking in force and sufficiency until amended as provided in section 25, but not wholly void. A void thing is null, and not subject to amendment. A thing in *esse* is a condition precedent to the exercise of the power of amendment, for a living graft cannot be put on a dead stock, therefore it is not correct to say that an imperfect certificate is void. When amended it has full life, and the amendment takes effect with the original as of the date of the latter. This is the function and proper office of an amendment, to put the original in perfect condition as if it had been complete in the first instance. The case of *Strepey* v. *Stark*, 7 Colo. 614, S. C. 5 Pac. Rep. 111, seems to support these views. The facts were different in that case, but the right of a locator to amend his certificate was recognized.

After the original certificate of the Durant location was amended, that certificate and the amendment were properly received in evidence as constituting a perfect certificate having effect from the date of the original, and no objection to the record of that claim is found. In this view, the Durant title is superior to the other, and must prevail. The other questions in the case may be passed without discussion. The judgment will be for defendant.