(No. 5211. January 23, 1929.)

JEROME J. DAY, Respondent, v. CHARLES A. STENGER and IDA M. STENGER, His Wife, Appellants.

[274 Pac. 112.]

C. J. Orland, for Appellant.

Latham D. Moore and Frank L. Moore, for Respondent.

HARTSON, District Judge.—Plaintiff owns the southeast quarter and the east half of the southwest quarter of Block Two in Russell's Second Addition to the town of Moscow, Latah County. Defendants own a tract adjoining on the north in the same block, described as follows:

"Commencing at a point one hundred feet west of the northeast corner of Block Two .... thence running West eighty feet on the north side of said block; thence running south one hundred twelve and 75/100 feet, to the south line of the north one-half of said block; thence running east on the south line of the north one-half of said block eighty feet to a point one hundred feet west of the southeast corner of the north one-half of said block; thence running north to the place of beginning."

Plaintiff brought an action to quiet title, alleging that defendants claim a strip of ground six (6) feet wide, north and south, and eighty (80) feet long, east and west, but that the strip is part of plaintiff's land, and defendant's claim is without foundation. The case was tried as one to establish the boundary line between the properties. The actual width of the disputed strip was fixed in evidence as 3.7 feet.

The answer, after denying plaintiff's title, affirmatively alleges that defendants and their grantors have been owners and in possession of the strip in controversy for more than thirty years, and have paid all taxes thereon. That during all of that time defendants' premises have been bounded and marked by monuments on the ground, and were so held and marked when plaintiff bought his land, and that plaintiff then knew where the line was, and that he never, until within two years, made any claim to the strip. That plaintiff and his predecessors have cultivated, occupied and pos-

sessed the tract south of the disputed strip for more than thirty years and plaintiff himself for about twenty years, and that the south side of the strip was fenced and the fence kept up and maintained by the adjacent owners as the dividing line for more than twenty-five years. That defendants and their predecessors have cultivated, occupied and fenced in the strip as part of their land for more than thirty years, during all of which time plaintiff and his predecessors have acquiesced in and recognized it as part of defendants' property.

The trial court found that in 1878 one John Russell, platted into lots and blocks a tract in Section Eight (8), Township Thirty-nine (39) North, Range Five (5) West of Boise Meridian, as the Original Townsite of Moscow, and caused a plat thereof, with explanatory notes, to be recorded. That in 1881 Russell platted Russell's Addition to Moscow, and caused a plat, with explanatory notes, to be recorded. That this addition joins the original town on the east, and runs parallel thereto, the northeast corner of the original town being the northwest corner of the addition, and that all streets running north and south are parallel to north and south streets in the original town, and streets running east and west correspond with east and west streets in the original town. That in 1882 Russell platted Russell's Second Addition and caused a plat thereof, with explanatory notes, to be recorded. That this addition adjoins Russell's Addition on the north and runs parallel thereto, the center of First Street as marked upon the plat being the dividing line between the two additions, the streets thereof running east and west being parallel to streets in Russell's Addition, and streets running north and south therein at right angles. That the original town and both additions were platted and surveyed by a surveyor, but no notes, other than the explanatory notes on the plats, are known to exist. That the size of the lots and blocks and width of streets and alleys are marked upon the plats. That the northwest corner of the original town is tied to the northwest corner of Section

Eight (8), township Thirty-nine (39) North, Range Five (5) West Boise Meridian. That Russell's Addition is tied to the original town, and Russell's Second Addition is tied to Russell's Addition. That one B. A. Nymeyer made the original survey of Russell's Second Addition, but that there are no known monuments of said survey existing on the ground at this time. That in 1891 the city of Moscow employed one Lewis to survey part of the original town, including Russell's Second Addition, and that in recent surveys in the second addition certain iron pegs have been found at certain corners of street intersections and corners of blocks which were set and placed by Lewis, and that Lewis destroyed all monuments placed upon the ground by Nymeyer. The Lewis survey is known as the "Iron Peg" survey. That no field-notes of the Lewis survey exist. That since the Lewis survey, many surveys have been made for the purpose of street improvements, and the location of lots and blocks in both additions, in which surveys permanent monuments in the center line of Main Street in the original town have been taken as base-lines.

The court found also that plaintiff became owner of part of his description by warranty deed in 1904, and the remainder in 1917, both of which deeds were recorded. That in 1890 one Shields became owner of the north half of Block Two by warranty deed, and that in 1920, by mesne conveyances, defendants became owners of their description, all deeds being recorded. That at all times since the respective parties received titles, their tracts have been assessed for taxes according to the calls of their respective deeds, which taxes have been paid regularly. It is further found that Block Two is 270 feet east and west and 225.5 feet north and south, and is bounded on the south by A Street, on the east by Van Buren Street, on the north by B Street, and on the west by Adams Street. That in 1904, one Ben E. Bush, then engineer of the city of Moscow, surveyed the southeast quarter of Block Two, taking as his starting point a permanent monument set at the intersection of the center lines of Third

and Main Streets in the original town and taking as his guide the plat of the original town and those of the two additions, and following the courses and distances marked thereon, and that he discovered a monument, the same being a three-quarter inch pipe at the southeast corner of the block. That he subsequently made another survey, finding the same monument. That in 1923 one Harvey J. Smith, then city engineer of Moscow, made a survey for the purpose of establishing the north line of plaintiff's property, that he used the same base and plan as Bush, and that he found iron monuments at intersections at the southwest, northeast and southeast corners of Block Two. That the southeast corner of the block, as located by Bush, ties in exactly, according to the plat, with the surrounding monuments located by Smith. The court then finds that the north line of plaintiff's property, and the south line of defendants', is the center line running east and west through Block Two. That said line is established by several surveys as the center east and west line based upon the iron monuments located by Bush and Smith. That the disputed strip lies south of this center line, is the property of the plaintiff, and that defendants have no lawful right or claim thereto. That at all times since the plaintiff became owner of this property, he has claimed that the disputed strip lies south of the center line of the block, and has claimed and asserted ownership and that neither he nor any of his predecessors have recognized the strip as being the property of the defendants or their predecessors. Finding XXIII, however, is as follows:

"The Court makes no finding upon the allegations of plaintiff's complaint or the allegations found in the further and separate defense of the defendants as to the possession of said strip of land six (6) feet wide, north and south, and eighty feet long, east and west, for the reason that the testimony relating thereto is conflicting and in view of the fact that the court finds that said strip of land lies within the calls and description of plaintiff's deed and does not lie

within the calls and description of defendants' deed, and that plaintiff has paid all taxes levied and assessed thereon for all purposes, occupation and possession of said strip is immaterial."

The conclusions and decree follow the findings, and defendants appeal.

The court below adopted, as the basis of its decision, the Lewis (Iron Peg) survey made in 1891, and the subsequent surveys of Bush and Smith, and relied entirely upon the lines established thereby. It failed to consider for any purpose the evidence of ancient fences and other improvements, either in Block Two or surrounding blocks. In this we think there was error. Surveyor Bush testified as follows: That he has made two surveys of the Day property. That he had no knowledge of any surveyor's field-notes, ties or other data of the original survey. That he used the monuments on Main Street in the original town, took a plat of the city, used the distances on the several lots, alleys and streets up to a certain point as recorded. Began at a monument at the intersection of Third and Main Streets, and by right-angles reached the southeast corner of the Day property. Found an iron pipe. Does not know where Nymeyer's survey began, or that they took any particular corner to start from to locate the monuments on Main Street, whether government corners or not. The surveys of the original town and Russell Additions are supposed to, but he is not positive they do, start from the government corners. Swears his surveys were correct as to tying-in back to the line he started from, but it would be impossible for him to say whether he started from the proper point, or that used by Nymeyer. He made the survey to show where the lines ought to be, but could not find where the lines of the original Nymeyer survey are. His purpose was not to follow out or confirm the 1881 survey, or find where it was. Knows nobody who knows anything about where the Nymeyer monuments were on the ground.

Surveyor Smith testified as follows: The only records of the Nymeyer surveys are the plats on file. In making surveys of Moscow and additions the monuments on Main Street are generally considered the base-lines. That neither he nor anybody else can tell, from the data on the plats where or at what point Nymeyer began his survey, and when he surveys for the purpose of locating property in the second addition he accepts the monuments he finds on the ground. He knows that Third and First Streets are laid out with reference to the base-line on Main Street; that the monuments they have on Third Street conform to the base-lines, and for that reason he works from the monuments in that part of town. The center line of Main Street has been accepted as the base-line ever since he has worked for the city. That line is ten feet east of the section line. Does not know that base-lines are correct, he took them as he found them when he came into office. Does not know whether those base-lines are the lines by which the original Nymeyer survey was made in 1881, and knows of no way whereby that fact could now be determined. The most he can say is that his surveys of Block Two are correct with reference to any monument that exists at the present time.

There is no evidence that either the Lewis or later surveys were correct, or that there was any attempt to ascertain where the original lines were, or monuments placed. The purpose of a resurvey is to ascertain the lines of the original survey and the original boundaries and monuments as established and laid out by the survey under which the parties took title. (*Bayhouse v. Urquides,* 17 Ida. 286, 105 Pac. 1066; *Wing v. Wallace,* 42 Ida. 430, 246 Pac. 8.) Parties cannot be bound by any survey not based upon the survey as originally made and monuments as erected. (*Idem.*)

Under the surveys adopted by the trial court, and introduced by the plaintiff, it was found that the disputed strip was part of the plaintiff's property, and within the description in his deed.

 A very large amount of proof was adduced by both parties concerning occupancy and improvement of the disputed ground. There is evidence that for many years there was a lattice-work fence on the south line of the strip, and a row of trees between three and a half and four feet north of the fence. Broadly speaking, the plaintiff sought to establish the row of trees as the line of division, while defendants attempted to show that the fence was their southern boundary. The line as fixed by the trial court was approximately the row of trees. On behalf of plaintiff there was testimony that one of defendants' predecessors, while living there, pointed out the row of trees to the plaintiff as being the true boundary. But the trial court, after hearing it, refused to give this and other evidence of similar character any force or effect in the face of the Lewis and later surveys, and in effect withheld it. Although the court finds that the northwest corner of the original town is tied to the northwest corner of Section Eight there is no evidence upon which to base the finding except the bare assertion on the plat. None of the surveyor witnesses started from a government corner, and whether the base-line on Main Street of the original town, which they used as their initial point, is correctly placed in relation to the quarter corner on the west side of Section Eight, as noted on the plat of the original town, or was the beginning point of the Nymeyer survey, are questions for which there is no answer in the record. It is possible, perhaps, that by availing themselves of data on the plats in evidence, surveyors can correctly ascertain the lines of the original survey, but this was not done, and the witness Smith declares neither he nor anyone else can do it. In the present state of the record, since it is evident that the lines adopted by the trial court are not shown to coincide with the original lines, the court erred in accepting them as exclusive proof of the original survey.

 In case of inability to establish the monuments and lines of the original survey, it then becomes necessary to accept evidence of ancient fences and other improvements

as evidence of the original boundaries, though in its nature hearsay, upon the theory that the persons originally constructing the improvements would naturally have located them with reference to existing monuments. (*Case v. Ericson et al.*, 44 Ida. 686, 258 Pac. 536.) The evidence adduced by the parties concerning fences, trees and other improvements should not have been disregarded by the trial court, but should have been considered, together with evidence of fences, sidewalks and other artificial monuments in other blocks of Russell's Second Addition, for the purpose of ascertaining the location of the original monuments and lines. The issues of adverse possession and long acquiescence were squarely raised by the answer, and the lower court in failing to consider the evidence relating thereto, and in failing to make findings thereon, committed reversible error.

The judgment is reversed, and the cause remanded for a new trial. Costs to appellants.

Givens and Taylor, JJ., concur.

Budge, C. J., dissents.

Wm. E. Lee, J., deeming himself disqualified, took no part.