GRIFFITH ET AL. v. NOONAN ET AL.

(No. 2230; January 26, 1943; 133 Pac. (2d) 375)

For the appellants the cause was submitted on the brief of *Preston T. McAvoy* and *E. E. Wakeman* of Newcastle.

For the respondents the cause was submitted on the brief of *Raymond & Guthrie* of Newcastle.

BLUME, Justice.

This is an action to quiet title to a bentonite mining claim of 160 acres covering the N/2SW/4, NW/4SE/4, SW/4NE/4, Sec. 24, T. 50 N., R. 66 W. 6th P. M., in Crook County, Wyoming. The trial court awarded judgment to the plaintiffs as asked. Some of the defendants disclaimed an interest in the land, having conveyed their rights to the Eastern Wyoming Bentonite Company, and neither they nor that Company have appealed in this case. Some of the defendants, however, have appealed, and the dispute herein is between these appellants, defendants below, and the plaintiffs, respondents in this court.

The facts, so far as pertinent herein, are substantially as follows: On June 29, 1933, the Department of the Interior granted an oil and gas prospecting permit to one Walter F. Tracy for the period of two years covering the land in controversy here and other lands. On August 21, 1935, by Act of Congress (49 U. S.

Stats. at Large, part 1, p. 674), the oil and gas leasing law of February 25, 1920, was amended in certain respects, and provided, among other things, as follows: "Provided that all permits outstanding on the effective date of this amendatory act which on said date shall not be subject to cancellation for violation of the law or operating regulations and which have theretofore been extended by the Secretary of the Interior, shall be and the same are hereby extended until December 31, 1937, subject to the applicable provisions of such prior extensions; provided further, that the Secretary of the Interior is hereby authorized to extend for the additional period of not to exceed one year any permit on which diligence has been exercised or on which drilling or prospecting has been suspended at the direction of the Secretary during the extension period hereby granted, but no extension of any permit beyond December 31, 1938, shall be granted under authority of this or any other act." Further provisions for extensions of certain leases were granted by Act of Congress approved August 26, 1937 (50 U. S. Stats. at Large, part 1, 842). But it is not claimed that the oil and gas lease in question here came within the provisions of that act. On May 28, 1938, the administrative geologist of the United States Department of the Interior reported to the Commissioner of the General Land Office that the lease in question in this case was not eligible for an extension under the Act of Congress last mentioned. On July 12, 1938, the Commissioner aforesaid reported to the Registrar of the local Land Office at Buffalo, Wyoming, that the oil and gas lease above mentioned was unconditionally extended to December 31, 1938, by the Secretary's order of December 23, 1937, and further stated: "This permit may not be extended beyond December 31, 1938, but the right to prospect the land may be continued under lease by the filing on or before that date of an application to ex-

change the permit for a lease under the provisions of the Act of Congress of August 21, 1935." According to the letter of the Commissioner of the General Land Office directed to the local office at Buffalo, Wyoming, dated February 24, 1940, the oil and gas lease was noted as cancelled on the records of the office at Buffalo as of March 25, 1940. In the meantime, I. B. Griffith, one of the plaintiffs and respondents in this case, had evidently written to the aforesaid Commissioner with reference to whether or not the lands herein involved were subject to location of a mining claim. By letter of March 28, 1939, he was advised by the Commissioner of the General Land Office that the oil and gas permits above mentioned "terminated December 31, 1938, by operation of law. They have no legal standing and this office knows of no objection to a location of the lands if mineral in character under the United States mining laws." Thereupon, and on the 17th day of May, 1939, the plaintiffs and respondents herein located the bentonite mining claim in controversy herein, placing monuments at the corners of the claim, posting notices thereon, making the discovery and filing the notice of location for record in the office of the county clerk of Crook County, Wyoming. Subsequently, on June 28, 1940, they filed an affidavit that the proper assessment work on this claim and other claims had been duly made. And there is testimony in the record that the work as stated had been done. On May 14, 1940, the appellants herein also located a bentonite mining claim on part of the land in controversy herein, namely, on the SW/4NE/4, and on that date part of the appellants located a similar claim on the NW/4SW/4 of the section and township above mentioned. And the dispute herein relates to the validity of these locations as against the location made by the plaintiffs about a year previously. The appellants contend, first, that the location of plaintiffs

on May 17, 1939, was prematurely made and therefore void, and, second, that they, plaintiffs, did not thereafter do the proper assessment work as required by law.

■ Counsel for appellants have cited us to various decisions of the United States Land Department, for instance, Joseph E. McClory, 50 L. D. 623, where it was held that the granting of an oil and gas prospecting permit precludes, as long as the permit is in force, the appropriation of the land for metalliferous minerals under the United States mining laws. That, too, was held in Filtrol Company v. Brinton & Eckhardt, 51 L. D. 649. The correctness of these decisions may be conceded, but the question herein is as to whether or not the oil and gas prospecting permit above mentioned was in force on May 17, 1939. Under the Act of Congress of August 21, 1935, hereinbefore mentioned, the permit expired on December 31, 1937, with the right on the part of the Secretary of the Interior to grant an extension of the permit for an additional year, but no longer. That extension was granted. The grantee under that permit, accordingly, had no further rights under his permit after the last mentioned date, by the very terms of the Congressional Act. As above mentioned, the Commissioner of the General Land Office stated in his letter to Mr. Griffith that the permit expired by operation of law on December 31, 1938, and that he saw no reason why the land was not open after that time for location under the proper mining laws. In a circular of the General Land Office dated December 2, 1937 (56 L. D. 488, 489), the Land Department took the position that language such as contained in the Act of Congress of August 21, 1935, caused the permit to terminate by operation of law. It appears to us that this construction of the Act of Congress is correct.

Notwithstanding that, the appellants herein contend

that the location of the bentonite mining claim made by the plaintiffs and respondents was invalid, because of a rule of the Department of the Interior mentioned in Stewart v. Peterson, 28 L. D. 515, and a circular issued pursuant thereto shown in 29 L. D. 29, 30. The rule provides: "It is hereby directed that no application will be received or any rights recognized as initiated by the tender of an application for a tract embraced in an entry of record until said entry has been cancelled upon the records of the local office. Thereafter and until the period accorded a successful contestant has expired or he has waived his preferred right, applications may be received, entered, and held subject to the rights of the contestant, the same to be disposed of in their order of filing upon the expiration of the period accorded the successful contestant or upon the filing of his waiver of his preferred right." It was held in Germania Iron Co. v. James, 89 Fed. 811, and James v. Germania Iron Co., 107 Fed. 597, that the rule is binding upon the government wherever applicable, and we cited these cases with approval in Walls v. Evans, 38 Wyo. 103, 265 Pac. 29. The main question, accordingly, herein, is as to whether or not the rule mentioned is applicable in this case. Stewart v. Peterson, above mentioned, involved a homestead right, but the rule apparently is applied by the United States Land Office in all cases in which the application for a right in public lands is initiated by an application in the local land office. Thus in the circular of December 2, 1937, 56 L. D. 489, above mentioned, the Department ruled that notwithstanding the fact that "permits have already been terminated or will hereafter be terminated. by operation of law," the rule would be applied in cases of oil and gas permits and that no application would be noted upon the records of such office until final disposition of a previous application.

We can see the applicability and beneficial effect of

the rule in all such cases. It was made for the purpose of orderly administration and to prevent the cluttering up of the records of the local land offices with conflicting applications. As stated by the Supreme Court of the United States in Holt v. Murphy, 207 U. S. 407, 28 Sup. Ct. 212, "to enforce it will tend to prevent confusion and conflict of claims." But the applicability or beneficial effect or purpose in a case like that before us is not perceivable. Neither the terms nor the reason of the rule apply in this case. No application is filed to initiate a right to a mineral claim such as this case involves. A right of that kind is initiated by discovery, by marking the boundaries of the claim, by posting notices, and by filing notice of the claim, not in the United States local Land Office, but in the office of the county clerk of the county in which the claim is located. No confusion which the rule was made to prevent on the records of the local Land Office could possibly, therefore, be caused by the initiation of a right such as that before us. It is not contended by the appellants herein that the plaintiffs did not comply with the requirements of law to initiate their right, and we must accordingly hold that the location of the plaintiffs was not initiated prematurely, but was valid when made.

■ It is also contended that the plaintiffs and respondents did not do their proper assessment work on the claims during 1940 or 1941. It is not necessary to examine whether or not the conflict in testimony on that point is sufficient to uphold the claims of the plaintiffs herein. The appellants have no such interest in the property in controversy so as to raise that point. Von Gal-Scale v. Cottrell, 2 Cal. App. (2d) 29, 37 P. (2d) 715. The location of the appellants was made on May 14, 1940, when the time for doing the proper assessment work on the property had not expired. Section 28, Title 30, U. S. C. A. 1940, provides: "The period within which the work required to be done

annually on all unpatented mineral claims located since May 11, 1872, including such claims in the Territory of Alaska, shall commence at 12 o'clock meridian on the first day of July, succeeding the date of location of such claim." The plaintiffs and respondents herein had, accordingly, until midnight of June 30, 1940, to do their proper assessment work, and any attempted location or relocation of the land by the appellants prior to that time was absolutely null and void. Slothower v. Hunter, 15 Wyo. 189, 199, 88 Pac. 36; Berquist, et al., v. Copper Co., 18 Wyo. 234, 268, 106 Pac. 673, 683; Independence Placer Mining Co. v. Hellman, 62 Ida. ......, 109 P. (2d) 1038, 1041; note, 68 L. R. A. 836; 40 C. J. 846. And the fact that the plaintiffs and respondents may not have done their proper assessment work subsequently does not aid the appellants herein. Thus it is stated in 36 Am. Jur. 349:

"In other words, a re-location (a junior location) of land that at the time is covered by a valid and subsisting location, is wholly void, not only against the prior locator but also as against the world, and neither succeeding default by the original appropriator nor subsequent discovery by the junior claimant can make it valid."

In Slavonian Mining Co. v. Perasich, 7 Fed. 331, 339, the court stated:

"It would never do to permit an entry upon a mining claim before the owner of it was in default, for the purpose of making a provisional location to be valid or worthless according as the owner failed or not to do the annual work subsequently."

The court considered this point at great length in Belk v. Meagher, 104 U. S. 279, 26 L. Ed. 739, and held that subsequent default of the senior location does not validate the right of the junior claimant, the court saying in part:

"The right to the possession comes only from a valid location. Consequently, if there is no location there

can be no possession in it. Location does not necessarily follow from possession, but possession from location. A location is not made by taking possession alone, but by working the ground, recording and doing whatever else is required for that purpose by the Acts of Congress and the local laws and regulations. As in this case all these things were done when the law did not allow it. They are as if they had never been made. * * * A location to be effectual must be good at the time it is made. * * * To hold that before the former location has expired an entry may be made and the several acts done necessary to perfect a re-location will be to encourage unseemly contests about the possession of the public mineral bearing lands which would almost necessarily be followed by breaches of the peace."

The rule of that case was re-affirmed in Swanson v. Sears & Kettler, 224 U. S. 180, 32 Sup. Ct. 485, 56 L. Ed. 721, wherein the court held that (quoting the syllabus in 32 Sup. Ct. 485) :

"An attempted location of a mining claim based upon a discovery within a then valid and subsisting claim is absolutely void for the purpose of founding an adverse claim and does not attach upon the subsequent failure of the locator to do the required annual assessment work."

The judgment of the trial court must accordingly be affirmed, and it is so ordered.

*Affirmed.*

KIMBALL, Ch. J., and RINER, J., concur.