ARTHUR L. HAGERMAN, MINNIE B. HAGER-
MAN, CHARLES M. HAGERMAN, I. B. GRIF-
FITH, ELSIE O. DIEHL and ALFRED M. DIEHL,

*Plaintiffs and Respondents,*

vs.

ROY N. THOMPSON, J. E. TAYLOR, LEONA M.
THOMPSON, V. C. THOMPSON, FRANK R.
THOMPSON, JACK G. THOMPSON, MARJORIE
E. THOMPSON and BEATRICE RAYMOND,

*Defendants and Appellants.*

(No. 2519; September 18, 1951; 235 Pac (2d) 750)

516

518

520

For the defendants and appellants the cause was submitted upon the brief of Raymond, Guthrie and Raymond of Newcastle, Wyoming.

For the plaintiffs and respondents the cause was submitted upon the brief of Otis Reynolds of Sundance, Wyoming, and Earl Dunlap of Gillette, Wyoming.

522

## OPINION

BLUME, Justice.

This is an action brought by plaintiffs to quiet title to a placer mining claim, called the "Little Side," consisting of the SE¼ of the NE¼, the NE¼ of the SE¼ of Section 21 and the NW¼ of the SW¼ of Section 22, all in Township 50, North of Range 66 West of the 6th Principal Meridian, in Crook County, Wyoming. The trial court quieted the title to this claim in the plaintiffs as prayed for in the petition, and the defendants, here-

inafter generally called the appellants, have appealed to this court.

To better understand this opinion, it might be well for the reader to draw for himself a rough map of Sections 21 and 22, hereinafter mentioned, and divide them into forty-acre tracts.

The placer mining claim here in question adjoins a patented placer mining claim called the Griffith No. 30 which consists of the SW¼ of the NW¼, the NW¼ of the NW¼ of Section 22 and the N½ of the NE¼ of Section 21, Township 50, Range 66. The defendant, Roy N. Thompson ,owns the surface rights of the 120 acres here in question. He and one J. E. Taylor, had filed a placer claim on the lands directly in question herein on July 8, 1937. At that time, however, these lands were included in an oil and gas prospector's permit held by one Walter F. Tracy, so it is admitted herein that the location made at that time was void. Griffth vs. Noonan, 58 Wyo. 395, 133 P. 2d 375. It appears that one of the plaintiffs in this case called Thompson's attention to the fact that his location made in 1937 was void but Thompson paid no attention to that. Subsequently on July 26, 1944, Hagerman, Griffith, and others located the placer mining claim in question here. The witness, Hagerman, testified that he posted a discovery notice within the boundaries of the claim at the time of the location. He adopted three corners of the so-called Griffith No. 30 above mentioned. That claim, as may be noted, adjoins the claim in question here on the north and part on the east. The portion on the east side consists of the SW¼ of the NW¼ of Section 22, township and range aforesaid, and is accordingly directly north of the NW¼ of the SW¼ of Section 22 in question here and directly east of the SE¼ of the NE¼ of Section 21, township and range aforesaid, also included in the Little Side placer mining

claim involved in this action. Hagerman testified that after having duly made discovery of bentonite, he and his co-locators adopted three of the corners of the Griffith No. 30 above mentioned, in the SW¼ of the NW¼ of Section 22 aforesaid as corners of the claim of plaintiffs, all of which had substantial posts four inches square and three feet above the ground, placing a location notice at Post No. 1 on the northeast corner of the SE¼ of the NE¼ of Section 21 aforesaid, in a tobacco can nailed to the post. Post No. 2 (as marked in the record), one of the Griffith No. 30 posts, was at the northeast corner of the NE¼ of the SE¼ of Section 22 aforesaid; Post No. 3 at the northeast corner of the NW¼ of the SW¼ of Section 22 aforesaid. Hagerman also testified that he or I. B. Griffith erected substantial posts four inches square and three feet above the ground at other corners, namely, Post No. 4 at the northwest corner of the SE¼ of the NE¼ of Section 21 aforesaid; Post No. 5 at the southwest corner of the NE¼ of the SE¼ of Section 21 aforesaid; Post No. 6 (4 inches in diameter) at the southeast corner of the NW¼ of the SW¼ of Section 22 aforesaid. A mark was put on each of the posts to show what it was. Just what the mark was is not clear. In other words, he testified that substantial posts existed or were placed at six different corners of the mining claim in question here. This testimony is corroborated by other witnesses. The Griffith No. 30 above mentioned is a patented claim and was surveyed by one Cyrus Russell, a licensed surveyor of the state, who surveyed the claim in 1939 or 1940 and established the corners, as he claimed, according to the original government survey. The testimony shows that the corners Nos. 1, 2 and 3 established by Russell were generally recognized as the correct corners for many years. The witness Robinson, a surveyor, resurveyed the land subsequently and claimed that the corners established by Russell were

not correct. That matter will be mentioned hereafter more fully. The testimony further shows that while stakes Nos. 5 and 6 apparently had disappeared, nevertheless one was standing at least at the corner where the location notice was posted, and seemingly at corners mentioned as 2 and 3. According to the witness Messersmith corners (posts) Nos. 2 and 3 and perhaps No. 4 were easily visible when standing at corner (post) No. 1. The witness Robinson testified that when he made his survey and after looking over the notice of location placed by Hagerman, he knew exactly what ground the plaintiffs involved were claiming. Hagerman testified that work was done on the claim by the plaintiffs in 1945, 1946 and 1947, but that the defendant Thompson attempted to stop the plaintiffs from doing their assessment work in 1948.

On September 3, 1946, the defendant Roy N. Thompson, and others, filed a placer relocation notice and certificate dated August 23, 1946, in the office of County Clerk, Crook County, Wyoming, claiming the location of these lands here in dispute. They relocated the claim on October 1, 1947, after Robinson had surveyed the land. The court among other things found: "That at the time defendants attempted to make their locations on August 23, 1946 and October 21, 1947 respectively, they had actual notice of plaintiffs' location of the Little Side claim and the boundaries thereof." The testimony in the record, we think, sustains this finding of the court, and in fact no question in that connection seems to be raised in the briefs filed on the part of the appellants in this court.

The location notice of the plaintiffs filed in the office of the County Clerk, Crook County, Wyoming, was as follows: "NOTICE IS HERBY GIVEN That we, the undersigned citizens of the United States, having complied with the requirements of Chapter Six, of Title

Thirty-two of the Revised statutes of the United States and the laws of the State of Wyoming; have on the 26 day of July, A. D. 1944, located ................ Acres of Bentonite Mining Ground, situated in unorganized district, Crook County, Wyoming, and described as follows, to-wit: S.E.4 N.E.4 N.E.4 S.E. 21 N.W.4 S.W. 22 Section 22-21, Township 50 North, Range 66 West, said claim to be known as the Bentonite Placer Mining Claim." This notice was signed by Arthur L. Hagerman and others, all of whom were citizens of the United States. It would seem that the location notice placed in the can attached to one of the posts of the claim in question contained the name of the claim, namely that of "Little Side" or possibly "Little Cycle." Subsequently and on May 3, 1949, the locators of the Little Side Mining claim filed in the office of County Clerk, Crook County, Wyoming, the following amended location notice: "KNOW ALL MEN BY THESE PRESENTS: That we, Arthur L. Hagerman, Minnie D. Hagerman, Charles M. Hagerman, I. B. Griffith, Elsie O. Diehl, and Alfred N. Diehl, the undersigned citizens of the United States, having complied with the provisions of Chapter 6, Title XXXII of the Revised Statutes of the United States and with the local customs, laws and regulations, claim by right of discovery and location and by this amended location certificate, the Little Side placer mining claim, containing 120 acres, situate, lying and being in an unorganized mining district, Crook County, Wyoming, described as follows, to-wit: The southeast quarter of the northeast quarter and the northeast quarter of the southeast quarter of Section 21, the northwest quarter of the southwest quarter of Section 22 in Township 50 North of Range 66 West of the Sixth Principal Meridian, Wyoming. The mineral claimed and to be mined hereunder, being a clay commonly called BENTONITE. Being the same claim originally located on the 26th day of July, 1944 and re-

corded on the 1st day of August, 1944 in Book 85 on page 381 in the office of the county clerk of Crook County. Date of discovery: July 26, 1944. Date of location: July 26, 1944. Date of this amended certificate: April 16, 1949." Signed by the same parties as the original notice.

The statutes governing in this case are, first, Section 57-921, Wyo. Comp. St. 1945 reading as follows: "Hereafter the discoverer of any placer claim shall, within ninety (90) days after the date of discovery, cause such claim to be recorded in the office of the county clerk and ex officio register of deeds of the county within which such claim may exist, by filing therein a location certificate, which shall contain the following: 1. The name of the claim, designating it as a placer claim; 2. The name or names of the locator or locators thereof; 3. The date of location; 4. The number of feet or acres thus claimed; 5. A description of the claim by such designation of natural or fixed objects as shall identify the claim beyond question. Before filing such location certificate, the discoverer shall locate his claim: First, by securely fixing upon such claim a notice in plain painted, printed or written letters, containing the name of the claim, the name of the locator or locators, the date of the discovery, and the number of feet or acres claimed; second, by designating the surface boundaries by substantial posts or stone monuments at each corner of the claim." And second, Section 57-906 of the same statutes relating to amended or additional location reads as follows: "Whenever it shall be apprehended by the locator, or his assigns, of any mining claims or property heretofore or hereafter located, that his or their original location certificate was defective, erroneous, or that the requirements of the law had not been complied with before the filing thereof, or shall be desirous of changing the surface boundaries of his or

their original claim or location, or of taking in any part of an overlapping claim or location which has been abandoned, such locator or locators, or his or their assigns, may file an additional location certificate in compliance with and subject to the provisions of this Act (§§ 57-901—57-928) ; provided, however, that such relocation shall not infringe upon the rights of others existing at the time of such relocation, and that no such relocation, or other record thereof, shall preclude the claimant or claimants from proving any such title or titles as he or they may have held under any previous location."

Appellants claim, if we understand their contentions, that the location of the mining claim by the plaintiffs is absolutely void for the reasons: first, that the description of the land in the location notice is insufficient; second, that the location notice fails to state the number of acres contained in the claim; third, that no name was given therein to the claim; and, fourth, that the location notice was not placed on the land in question here.

If the certificate of location can be said to be absolutely void then, doubtless, the contention of counsel for appellants is correct. See 58 C. J. S. 107, Note 23; Morrison's Mining Rights (16th Ed.) 160. Judging from the cases generally, however, if a location is merely defective, then the courts are inclined to hold that defects are cured when a subsequent locator has knowledge of the prior location or if the location notice has been amended so as to comply with statutory requirements. That was held to be so as to an amended certificate in Moyle vs. Bullene, 7 Colo. App. 308, 44 P. 69. It would be somewhat hazardous to lay down an exact and definite rule for all cases as to when the location or attempted location of a placer mining claim is void or when it is merely defective. Such a claim doubt-

less cannot be located by a mere mental operation or by the mere assertion of possession or of ownership thereof either orally or in writing. There must doubtless be a reasonable physical substratum which marks the claim and a reasonable attempt to comply with the statutory requirements. Thus it is stated in 58 C. J. S. 100 that there must be "some physical marks placed on the ground itself which of themselves, or in connection with writings, signs, or other marks on the ground, will tend to inform one seeking to identify the claim as to the quantity and identity of the ground claimed." Courts have laid down some general rules in determining whether a location should be deemed to be void or merely defective. Most of these rules have been mentioned in Scoggin vs. Miller, 64 Wyo. 206, 189 P. 2d 677, and Miller vs. Scoggin, 64 Wyo. 248, 189 P. 2d 693; Chittim, Hejde vs. Belle Fourche Co., 60 Wyo. 236, 149 P. 2d 142; Griffith vs. Noonan, 58 Wyo. 395, 133 P. 2d 375, so that it will not be necessary to enter into any lengthy discussion thereof. One of the rules is stated in 2 Lindley on Mines, Section 381 where the author says: "In the initiation of rights upon public mineral lands, as well as in the various steps taken by the miner to perfect his location, his proceedings are to be regarded with indulgence, and the notices required invariably receive at the hands of the courts a liberal construction." See also 58 C. J. S. 101, Notes 15 and 16. Another rule is stated in Steele vs. Preble, 158 Ore. 641, 77 P. 2d 418, cited in the case of Scoggin vs. Miller supra where it is said: "The purpose of posting a notice and marking the boundary lines is to inform and guide others who may wish to make locations in that vicinity. But one who has knowledge of the boundaries of a mining claim cannot complain of the absence of stakes, monuments, etc., which are intended to identify the boundary lines. * * * Likewise, he cannot complain because of a defect in the posted notice. * * * Accord-

ingly, a mere defect in the lines or notices could avail the defendants nothing." See also 58 C. J. S. 99. A third rule, relating to amended certificates is stated in 58 C. J. S. 107 as follows: "Under the statutes in many, if not all, of the mining states and territories, a defective or erroneous certificate of location or declaratory statement may be cured by the filing of an amended or additional certificate or statement at any time after the original has been filed, provided there is no interference with existing or intervening rights of others."

In connection with the last mentioned rule, counsel for appellants claim that in this case there was an interference with existing or intervening rights at the time when the amended certificate of location was filed in this case in 1949, by reason of the fact that the appellants in this case had filed a certificate of location on the same property on September 3, 1946 and October 1, 1947 and that, accordingly, the amended location notice filed by plaintiffs is of no avail. However, it is stated in 58 C. J. S. 107 as to the proviso, such as contained in Section 57-906, Wyo. Comp. St. 1945: "The proviso as to existing rights, however, does not relate to amendments of mere defects or errors, but applies only where the boundaries are changed so as to take in territory not before included within the claim." This statement is fully supported by the authorities. McEvoy vs. Hyman, 25 Fed. 596; Frisholm vs. Fitzgerald, 25 Colo. 290, 53 P. 1109; Morrison vs. Regan, 8 Ida. 291, 67 P. 955; Nichols vs. Ora Tahoma Mining Co., 62 Nev. 343, 151 P. 2d 615, and see Gobert vs. Butterfield, 23 Cal. App. 1, 136 P. 516. In Frisholm vs. Fitzgerald, supra, the Supreme Court of Colorado construed a provision identical to that in Section 57-906 supra of our own statutes and the court said: "It will be seen that this section treats of two subjects: First, it provides for the correction of errors and defects occurring in the orig-

inal certificate; second, it authorizes a change of boundaries, and the taking in of territory not included within the original location. The plain purport and effect of the first clause is to enable the miner, who in good faith has gone upon the public domain and expended time and money in performing the substantial acts required to locate a mining claim, but through inadvertence or ignorance has failed to comply with the requirements of the statute in describing his claim, to cure such error at any time by an amendment correcting the defective description, and thus perfect his record as of the date of his original certificate. We do not understand that the proviso in relation to existing rights has reference to amendments of this character, but is only applicable to a change of boundaries and relocation that should take in territory not before included within the claim. This is the plain import of the language used, and with this construction the statute may be made effectual to protect the rights of the locator without prejudicing any of the interests that third parties may have rightfully acquired. This construction of the proviso was adopted in McEvoy v. Hyman, supra. In Strepey v. Stark, 7 Colo. 614, 5 Pac. 111, it is said: 'And even when the certificate, for any of the reasons set forth in the statute, is deemed "void," it has been held admissible, in connection with a valid amended certificate correcting the defects of the original. Van Zandt v. Mining Co., 2 McCrary, 159, 8 Fed. 725. In support of this holding, two principal reasons may be mentioned: First, the original certificate showing the date of location and record, although fatally defective in matter of description or otherwise, may well be considered as an element tending to show good faith on the part of the locator in attempting to comply with the law in making his location ;second, the introduction of such original together with the amended, or, as it is termed in the statute, "additional," certificate, may offer a means of

comparison in respect to description and surface boundary of the premises located, whether the first is identical with that described in the additional certificate, or whether it embraces the precise ground of any portion thereof claimed by either of the contesting parties otherwise than according to such original location.' We think, therefore, that the court properly admitted the original and amended certificates of appellee in evidence." See also Bergquist et al. vs. Copper Co., 18 Wyo. 234, 254-256, 106 P. 673; Dean vs. Oil Co., 21 Wyo. 133, 128 P. 881, 129 P. 1023. In the latter case it is said that the original location certificate of a mining claim and an amended certificate, if one be filed, must be construed together, and, if sufficient when so construed, the location record will be valid, although neither standing alone would be sufficient. The amended certificate, if filed, relates back to the date of the original location. Morrison's Mining Rights (16th Ed.) page 159. We think that under these authorities the proviso above mentioned is not applicable in the case at bar. And we think that we should also adopt the rule stated in 2 Lindley on Mines, Section 398 that "a reasonable latitude of amendment is allowed, of which the locator cannot be deprived because someone has attempted to relocate his ground." This statement of the author appears to be approved as the correct rule in Bergquist vs. Copper Co., supra (18 Wyo. 234).

We must, accordingly, determine whether the location certificate in the case at bar is absolutely void or merely defective in the light of the rules of law above mentioned. In this connection we should mention the fact that courts are inclined to be liberal when a placer mining location is made by governmental subdivisions. Thus it is stated in Clark vs. Pueblo Quarries, Inc., 103 Col. 402, 86 P. 2d 602 as follows: "We hold that conformity of the boundaries of a placer claim with the

lines of the United States government survey, by description of a placer location as covering recognized units or subdivisions of such survey, is sufficient to satisfy both the Federal and the Colorado statute." To the same effect see Green vs. Gavin, 10 Cal. App. 330, 101 P. 931.

In the case at bar the ¼ (e.g. SE¼ of the NE¼) is designated by "4" (SE4 NE4). The "4" was partly omitted (e.g. NE 4 SE). As above stated it is contended by appellants that this description of the land is not sufficient and is not a description by governmental subdivisions. We are cited, among others, to the case of Powers vs. Larabee, 2 N. D. 141, 49 N.W. 724, where it was held that a tax-deed, based upon an assessment describing for instance, the W.2 of W.2, Section 7, Township 143, Range 57, did not convey any land and that such description is utterly void. There appears to be a conflict among the authorities. An annotation on the subject is contained in 1 A. L. R. 1228. In the case of Boles vs. McNeil, 66 Ark. 422, 51 S.W. 71, it was held that the symbols "E ½ SE.", used in describing a certain piece of land for assessment of taxes, were sufficient to indicate that they meant the "east half of the southeast quarter section," and that "E2 SE." conveyed the same idea, in an advertisement of the property on a tax sale. In the case of Chestnut vs. Harris, 64 Ark. 580, 62 Am. St. Rep. 213, the description of land as "NE. SE.", followed by the numbers of the section, township, and range wherein the land was situated, were held to indicate clearly the northeast quarter of the southeast quarter of the designated section. In Auditor General vs. Sparrow, 116 Mich. 574, 74 N.W. 881, the abbreviations "N.E.—N.E." were held to mean northeast quarter of the northeast quarter. In that case it appeared that the description, including the headings under which it was placed, was as follows:

"Description: N.E.—N.E., sec. 1, town. 45, range 44, 40 acres." The court said: "It is common knowledge that these terms would be thus understood by the general public, and that this method has been pursued in describing property in this state for many years. No court would hesitate to declare such meaning in an action between private parties, and we see no reason for thinking that it could mislead anyone." Moreover, tax cases are, we think, distinguishable. A tax-deed deprives a person of property already in his possession. We agree with counsel for plaintiff that in the case at bar it cannot be said that when the mining claim of plaintiffs was located, the defendants were deprived of any property. They, at that time, did not have any right to the bentonite located on the land but had merely the right to the surface of the land. Again, on May 28, 1945, and on May 27, 1946—dates which were prior to the location which the appellants attempted to make on the land in question—affidavits for exemption of assessment work were filed in the office of the county clerk which described the placer claim in question here as the "SE¼NE¼, NE¼SE¼ Sec. 21: NW¼ SW¼ Sec. 22, in Township 50 North of Range 66 West." That description is according to the usual mode of describing subdivisions of lands according to the United States Government Survey, and that description may be taken into consideration in determining the sufficiency of the location notice involved herein, at least as conveying knowledge to a subsequent locator. While a better description in the original location notice was doubtless advisable, there is no doubt, we think, that anyone who has any knowledge of land matters involving surveys of the United States Government would know what was meant. Robinson, the surveyor, testified that when he looked at the location notice he knew just what land was claimed on the part of the plaintiffs in this case. And while Roy Thompson is a farmer, he,

too, knew what was meant by the description of the land, in the original location notice. He had made filings himself. He himself testified: "Q. But you knew, didn't you, that I. B. Griffith and Charles Hagerman had located a bentonite placer mining claim on that ground, didn't you? A. Yes." So while he did not admit the boundaries as located by Griffith and Hagerman, he substantially admitted that he knew that Griffith and Hagerman claimed, as their placer mining claim, the governmental subdivisions in question here, whatever the true boundaries thereof might be. Furthermore, there is testimony that Hagerman and Thompson went over the land before plaintiffs filed their claim, with the view of Hagerman buying the bentonite and Thompson showed Hagerman the corner of the land where Post No. 1 was afterwards located. That, too, shows that Thompson knew what particular lands the plaintiffs claimed. It is stated in 58 C. J. S. 101: "Where a locator attempts in good faith to comply with the law, the courts are inclined to be liberal in construing his acts so as not to defeat his claim by technical criticism." Hence, we think that we are constrained to hold that whatever is amiss in the description of the land involved, presents at most a defect only of which no advantage can be taken by appellants by reason of the amended location certificate and by reason of Thompson's knowledge.

In view of the description above mentioned, it can hardly be claimed that the location notice did not state the number of acres which were claimed by the plaintiffs in this case. The sixteen different subdivisions of a section of the United States Government Survey ordinarily contain forty acres. There are exceptions to that, but that is the rule. Hence, the notice of location must be held presumptively at least, to state that plain-

tiffs in this case claimed 120 acres of land as included within the placer mining claim here in question.

As far as the naming of the claim is concerned, the description of the land in the manner above mentioned is as good an identifying mark as any special name that might have been attached to the claim. It took the place of a special name. It subserved the same purpose. Hence, in this respect, this case comes within the spirit of the Colorado case above mentioned. (Clark vs. Pueblo Quarries, Inc., supra). In Bingham Amalaga-mated Copper Co. vs. Ute Copper Co., 181 Fed. 748, it was held that when a claim is sufficiently marked upon the ground, the fact that the name of the claim was not inscribe din the corner stakes did not make any difference. Moreover, the notice placed at corner post No. 1, in fact, contained a name, though whether that was "Little Side" or "Little Cycle" seems somewhat uncertain. The requirement as to a name in the location notice filed for record may, if we should follow the holding in Babcock vs. O'Lanagan, 7 Alaska 171 (See 58 C. J. S. 101) be construed as directory only. So we think that in any event, the lack of attaching a special name cannot be said to be anything more than a defect which was cured by the amended location certificate, and by the fact of the knowledge of the location of the claim on the part of the appellant Thompson.

Appellants contend, as already stated, that the location notice of plaintiffs was not placed on the land which the latter claim as their placer mining claim. The evidence in the record is not sufficiently satisfactory to permit us to draw a definite conclusion. When Thompson, one of the appellants, located his claim on the same land in 1946, he placed, so he says, his notice in the middle of his land. It is not shown where he placed his corner posts. It is not improbable that he placed them in the same places in which plaintiffs

placed theirs, so that his actual location of his claim was in 1946 just about as defective as he now claims the location of the claims of the plaintiff to be. Later, in 1947 he had W. R. Robinson, a licensed surveyor, survey the land and he then conformed his corners to that survey. Robinson gave no notice of his intended survey such as is contemplated to be given according to Section 27-1205, Wyo. Comp. St. 1945, in order to reestablish government corners. He testified that many of the government corners in that region were lost. He failed to testify from what definitely known government corners he commenced his survey. He had previously made a survey of the land in the neighborhood—just what land is not shown—for the Black Hills Bentonite Company. And he apparently, in surveying Thompson's land, accepted the corners which he had established in connection with that survey. He testified that corner (post) No. 1 of the claim of plaintiffs is 80 feet east of the boundary of Section 21 involved herein, and is accordingly outside of the land which plaintiffs say constitutes their placer mining claim. Counsel for appellants are in error in stating that Messersmith testified that the location notice of the plaintiffs was 79 feet from the true corner. He stated (Question 464) that it was that distance from the true boundary, if the Robinson survey or the resurvey of the United States government were accepted; but "under the old survey it was right," referring to the Russell survey, which we shall proceed to mention, and which has also been mentioned previously. The claim of the plaintiffs was located according to a survey of one Cyrus Russell, a licensed surveyor, who surveyed the so-called Griffith No. 30 mining claim in 1939 or 1940 and who, in that connection located as correct, the three corners which, as heretofore mentioned, were subsequently adopted (as was permissible, 58 C. J. S. 100) as joint marks at corners Nos. 1, 2 and 3 by the plaintiffs,

so that if his survey is correct, the contention that the location notice of plaintiffs at post marked No. 1, or the posts marked Nos. 2 and 3 in the record, were placed 80 feet east of their claimed location is not valid. The testimony shows that Russell commenced his survey at the southwest corner of Section 16, Township 56, Range 66, where he had found a definitely known government corner, and Robinson admitted the correctness of that corner. The testimony further shows that a recent survey of the region was made by United States government surveyors, and they apparently located the quarter corner of the east side of Section 21 about 4 feet from where Robinson apparently located his quarter corner. The details of this recent survey by agents of the United States government are not shown. So the question arises whether the trial court was justified in accepting the Russell survey as correct. The rule seems to be well established that the purpose of a resurvey is to ascertain the lines of the original survey and the original boundaries and monuments as established and laid out by the survey, under which the parties take title. Parties cannot be bound by any resurvey not based upon the survey as originally made and monuments erected. 11 C. J. S. 635. Day vs. Stenger, 47 Ida. 253, 274 P. 112; Bayhouse vs. Urquides, 17 Ida. 286, 105 P. 1066; Wing vs. Wallace, 42 Ida. 430, 246 P. 8, and numerous cases cited. All the three surveys in question here were resurveys, binding on no one, unless one of these perchance should ultimately in a proper proceeding be found to be correct. We have no way of knowing which one of them is correct. It is a well-known fact that surveyors are apt to differ from each other, and surveyors employed by the United States government are not immune from the frailties of their profession. Which one of these resurveys is correct is a question of fact. United States vs. State Investment Company, 264 U. S. 206, 44 Sup.

Ct. 289, 68 L. Ed. 639. We cannot say that the trial court was in error in accepting the Russell resurvey.

We might incidentally remark that we do not mean to intimate that when a placer mining location is made on surveyed land, according to governmental subdivisions, in a region in which many governmental corners are lost, so as to make the location of boundaries doubtful, and the location is made in good faith, based on a reasonable state of facts, that a mistake in placing the location notice 80 feet outside of the true boundaries of the governmental subdivisions claimed, is fatal to the validity of the claim, in a case in which a subsequent locator knows of the first location. See Kern Oil Co. vs. Crawford, 143 Cal. 298, 76 P. 1111 for the negative. That point is not necessary to be decided.

Appellants contend that the trial court enjoined the appellants from going upon the land at all and that Thompson is deprived of the right to pasture his cattle on any part of the claim in question. If that were correct, it would be by reason of the court in its judgment among other things enjoining the appellants "from trespassing upon said premises." Thompson owns the surface of the land and he has, of course, the lawful right to go upon any part of the premises so long as he does not interfere with the rights of the plaintiffs in this case. We hardly think that when he thus uses the property lawfully and does not interfere with the rights of the plaintiffs that he is then trespassing upon the premises in question. The term "trespass," we think, includes the thought of unlawful user. The court only enjoined that.

We see no reason for interfering with the judgment of the trial court and it must accordingly be affirmed.

*Affirmed.*

KIMBALL, C. J., and RINER, J. concur.